MONICA HOLDEN, Plaintiff-Appellant, v. NATIONAL BOULEVARD BANK OF CHICAGO, Defendant-Appellee.

First District (5th Division)   No. 1—91—2118

Opinion filed June 12, 1992.

Glenn Seiden and David T. Rothal, both of Glenn Seiden & Associates, of Chicago, for appellant.

Richard J. Prendergast, Ltd., of Chicago (Richard J. Prendergast, James Prendergast, and Jane F. Anderson, of counsel), for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff, Monica Holden (Holden), appeals from an order of the trial court denying her request for a mandatory injunction attempting to restrain the National Boulevard Bank of Chicago (Boulevard). Holden sought to enjoin the Boulevard from seizing certain assets of her trust.

In 1984 Holden became socially acquainted with Parviz Zargarpoor (Zargarpoor). Zargarpoor was an architect and president of Zargarpoor & Associates, Inc. (Associates). In the fall of 1984 Holden agreed to loan Zargarpoor $25,000. In January 1985 Zargarpoor approached Boulevard requesting a loan secured by his personal residence. Boulevard refused to make a loan secured by Zargarpoor's personal assets. When Boulevard refused to make a loan secured by Zargarpoor's personal assets, Holden offered to pledge a portion of her trust assets to secure Zargarpoor's loan. Consequently, Boulevard agreed to loan Zargarpoor $150,000. The loan agreement provided for quarterly interest payments with the principal balance due on January 27, 1986.

On January 24, 1985, Holden executed a letter agreement assigning $150,000 of her trust assets to Boulevard for the purpose of securing Zargarpoor's loan.

Holden's letter agreement provides in pertinent part:

"Relative to my Agency Account, known on your Trust Department records as No. 600644100 in addition to any and all other pledges to you. I hereby assign, transfer and pledge to you.

\* \* \*

ALL ASSETS UP TO $150,000.00 TO SECURE LOAN OF PARVIZ ZARGARPOOR & ASSOCIATES, INC.

This assignment, transfer and pledge has been made as collateral security to secure any and all notes and indebtedness and other liabilities of the undersigned to your Bank due or to become due or that may heretofore have been or hereafter be contracted."

On January 25, 1985, Holden executed an hypothecation agreement and a pledge agreement pledging $150,000 of her trust assets to secure Zargarpoor's loan. The hypothecation agreement provides in relevant part:

"1. The interest created by this Agreement secures the payment of all debts, obligations and liabilities of Debtor to Secured party incurred either contemporaneously herewith or hereafter. (collectively 'Liabilities').

2. Undersigned hereby assigns, transfers and pledges with Secured Party \* \* \* Assets in Custodial Account #600644100 up to $150,000 plus interest to secure loan of Parviz Zargarpoor & Assoc.

\* \* \*

6. Secured Party may from time to time, without notice to Undersigned, and without impairing or affecting the interest created hereunder \* \* \* (c) modify, extend or renew for any period any of the Liabilities or (d) resort to the Collateral for payment of the Liabilities whether or not Secured party shall have resorted to other collateral or proceeded against any other party (including Debtor) primarily or secondarily liable on the Liabilities."

The pledge agreement provides in relevant part:

"WHEREAS, this Agreement is made in consideration of any loan or extension of credit contemporaneously or hereafter made to Pledgor by Secured Party.

\* \* \*

1. The interest created by this Agreement secures the payment of all debts, obligations and liabilities \* \* \* incurred either contemporaneously herewith or hereafter \* \* \*."

On January 25, 1985, Zargarpoor directed Boulevard to disperse a portion of the loan proceeds in the amount of $25,368.17 to satisfy a debt to Holden. Zargarpoor also requested that a cashier's check for $72,000 be issued to the First National Bank of Lincolnshire, a cashier's check for $12,000 be issued to First National Bank of Lincolnshire, and $10,631.83 be deposited to the account of Associates. The balance of $30,000 was to remain as reserve until further notice.

On January 27, 1986, Zargarpoor's loan matured and the principal became due and payable. Zargarpoor was unable to pay the principal balance and requested an extension. On January 27, 1986, Boulevard agreed to extend Zargarpoor's loan until April 28, 1986.

On April 28, 1986, Zargarpoor requested another extension. Boulevard agreed to extend Zargarpoor's loan until July 28, 1986. When the loan came due on July 28, 1986, Zargarpoor again requested an extension. Boulevard again agreed to renew Zargarpoor's loan, but required Zargarpoor to begin reducing the principal balance of the loan as follows: $5,000 principal reduction due on October 28, 1986; $10,000 principal reduction due on January 28, 1987; $15,000 principal reduction due on April 28, 1987; $30,000 principal reduction due on July 28, 1987; and $90,000 balloon balance due on October 28, 1987.

Zargarpoor paid the $5,000 principal reduction payment due on October 28, 1986, but then failed to make the $10,000 principal reduction. By letter dated April 23, 1987, Boulevard demanded that Zargarpoor pay the then outstanding balance of the loan in the amount of $145,000 principal plus interest in the amount of $4,058.99. Boulevard sent a copy of the April 23, 1987, letter to Holden.

When Zargarpoor was unable to pay the outstanding balance of the loan, Boulevard agreed to renew Zargarpoor's loan. The April 26, 1987, agreement required Zargarpoor to reduce the principal balance by making six monthly installment payments of $1,726.19 with a final balloon payment of $134,642.86 due on June 1, 1988. Zargarpoor also signed a personal guaranty. At the same time, Boulevard asked Holden to execute an additional guaranty. Holden refused to execute an additional guaranty because Boulevard failed to obtain a third mortgage on Zargarpoor's home as additional security. Zargarpoor complied with the principal reduction terms of the April 26, 1987, extension but was unable to make the June balloon payment. Boulevard agreed to extend the due date of the balloon payment until August 26, 1989.

In July 1989 Zargarpoor's loan was once again in arrears. By letter dated August 28, 1989, Boulevard demanded payment in full in the amount of $140,787.01 with a per diem of $44.95 for each day after August 26, 1989. A copy of the August 28 letter was sent to Holden. In late 1989 Zargarpoor filed for bankruptcy.

After defendant informed plaintiff that it intended to debit plaintiff's account in the amount of $145,283.30, and according to the trial court decision, actually debited her account, Holden filed the instant complaint to enjoin the withdrawal of funds. On January 24, 1990, the parties agreed to establish an account, pending the outcome of this suit.

On June 6, 1991, the trial court issued an order denying plaintiff's request for an injunction. The trial court's decision indicated the following. The 1985 note was extended three times and by April 26, 1987, another note was signed by Zargarpoor to evidence the same $150,000 debt. "It provided for a different payment schedule." Plaintiff first argued that the April 26, 1987, loan agreement was a "new" agreement rather than a "renewal" and contained material differences from the original promissory note of January 25, 1985, and therefore the hypothecation agreement was discharged. Second, plaintiff argued consent was not obtained before material changes were made in the liabilities secured, and thus, the collateral was by law released.

The trial court held that pursuant to the January 1985 hypothecation agreement Holden agreed to secure loans up to $150,000 made contemporaneously with or after the agreement was signed, Boulevard was not seeking more than Holden had agreed to secure, and Boulevard gave Zargarpoor no new money after the January 1985 note. The trial court also found that Holden agreed that Boulevard need not notify her if it modified, extended or renewed the liabilities that she secured, and thus plaintiff was bound by the April 1987 order. Boulevard did not obtain Holden's consent because pursuant to the agreement it was not required to notify her. Finally, the trial court noted that Holden had agreed Boulevard could resort to her collateral whether or not it resorted to other collateral. On that same day the trial court entered an order directing the funds in the segregated account to be turned over to Boulevard.

Holden appeals the two orders of June 6, 1991. Holden argues on appeal that the trial court took the language of the hypothecation agreement between the parties out of context. Holden argues that Boulevard, by renewing the agreement with time provisions

and a subject matter outside the original agreement, released her and breached its agreement with her.

We disagree with Holden's argument and affirm the decision of the trial court.

At the request of Zargarpoor, Boulevard made a number of extensions on the loan, including one on April 28, 1986. It is these extensions that Holden claims relieve her from liability based on their hypothecation agreement. Holden claims on appeal that by renewing the agreement with time provisions and a subject matter outside the parties' original agreement, Boulevard breached its agreement with her. She also claims on appeal that she never agreed to allow perpetual modifications or renewals of their January 1985 agreement and did not intend to modify the agreement to such a degree that the new agreement would not even resemble the original.

Plaintiff maintains that the January 1985 note plainly states that it was due in January 1986 so it would be unreasonable to allow renewals and modifications after that time. She argues that in January 1986, under the terms of the agreements with Zargarpoor and plaintiff, defendant had a choice between using plaintiff's collateral towards any payments which were past due or returning the collateral to plaintiff. Plaintiff did not present this argument to the trial court and has thus waived the issue on review. Nevertheless, we find that pursuant to the terms of the agreements of the parties this argument lacks merit.

Zargarpoor's 1985 note provides in relevant part:

> "The undersigned authorizes the holder hereof, without giving notice and without affecting the liability of the undersigned to *** (c) extend the time of payment of this Note in whole or in part ***.
>
> No delay on the part of any Holder exercising any right under this Note, any security agreement, guaranty or other undertaking securing this Note shall operate as a waiver of such right or any other right under this Note ***."

In addition, all of the security agreements executed by Holden provided that Boulevard may modify, extend or renew Zargarpoor's loan without affecting its right against plaintiff. Zargarpoor's 1985 note did not limit Boulevard's power to extend Zargarpoor's loan or to extend the security agreements executed by Holden.

Alternatively, plaintiff argues that even if defendant was not in breach of its agreement with plaintiff in January of 1986, it breached the agreement when: first, defendant formed a new agree-

ment with Zargarpoor in April 1987 which plaintiff refused to guaranty; and second, after informing plaintiff that it intended to debit her account, Boulevard still maintained its right to collect upon the collateral, even after plaintiff expressed her disapproval of such actions by filing against defendant.

Holden contends that the 1987 extension constitutes a new debt which she never agreed to secure. Holden points to the following facts. The January 1985 agreement was for $150,000 and Zargarpoor signed the instrument in his corporate capacity whereas the April 1987 agreement was for $145,000 and Zargarpoor signed the note in both a corporate and a personal capacity. In addition, the payment schedules for the two notes were different.

We agree with the trial court's analysis in rejecting this argument. Holden agreed to secure loans made contemporaneously with or after the note was signed. Boulevard did not loan any new funds to Zargarpoor after the January 1985 note. Boulevard was not seeking more than Holden had agreed to secure. Moreover, Holden agreed that Boulevard need not notify her if it modified, extended, or renewed the liabilities she secured. The hypothecation agreement provides in relevant part:

> "Secured Party may from time to time, without notice to undersigned, and without impairing or affecting the interest created hereunder *** (c) modify, extend or renew for any period any of the Liabilites or (d) resort to the Collateral for payment of the Liabilities whether or not Secured Party shall have restored to other collateral or proceeded against any other party (including Debtor) primarily or secondarily liable on the Liabilites."

The April 26, 1987, note provided new payment terms for the original debt. Pursuant to the terms of her agreement Boulevard was not required to notify Holden of the new payment terms.

■■ Holden cites to Illinois Law and Practice, a restatement excerpt and a law review article to support her position that she was automatically released when the 1985 note was modified. Plaintiff's authorities support the position that a guarantor is ordinarily released if the underlying debt is modified without the guarantor's consent. (See Restatement of the Law of Security, §36 (1941); 30 Ill. L. & Prac. *Quo Warranto* §25 (1957); Robbins, *The Pledge as an Illinois Security Device: Part II*, 31 Chi.-Kent L. Rev. 201, 219-20 (1953).) However, pursuant to the terms of the hypothecation agreement, Holden consented to the modification, and as a result, Holden's aforecited authorities are not relevant to the present case.

For the reasons set forth above, we find that the April 26, 1987, note did not create an impermissible new debt. The trial court also found that even if the April 26, 1987, note is "new," Holden agreed that any liabilities incurred after the hypothecation agreement were also secured.

The 1985 letter agreement provides that Holden shall be liable for all existing and future loans. It states in relevant part:

> "This assignment, transfer and pledge has been made as collateral security to secure any and all notes and indebtedness and other liabilities of the undersigned to your Bank due or to become due or that may heretofore have been or hereafter be contracted."

Both the hypothecation agreement and the pledge agreement provide that "the interest created by this Agreement secures the payment of all debts, obligations and liabilities of [debtor or pledgor] to Secured Party incurred either contemporaneously herewith or hereafter." We agree with the trial court that even if the April 1987 note could be deemed a new note, under the terms of her agreements, Holden remains liable.

"A contract's meaning must be determined from the words or language used, and a court cannot place a construction on the contract which is contrary to the plain and obvious meaning of the language." (*Johnstowne Centre Partnership v. Chin* (1983), 99 Ill. 2d 284, 287, 458 N.E.2d 480.) Where the contract is unequivocal it must be carried out in accordance with its language. (*United Airlines, Inc. v. City of Chicago* (1987), 116 Ill. 2d 311, 507 N.E.2d 858.) A contract of guaranty is generally to be construed by the rules of construction applicable to other contracts. *State Bank of East Moline v. Cirivello* (1978), 74 Ill. 2d 426, 386 N.E.2d 43.

■ Holden argues that Boulevard's actions in renewal of the loan is contrary to her intent. Intention of the parties is determined by the parties' written agreement. It is only where there is an ambiguity that the court looks into the factual intention of the parties. Whether or not an ambiguity exists is a matter of law for the court to determine. (*National Tea Co. v. American National Bank & Trust Co.* (1981), 100 Ill. App. 3d 1046, 1049, 427 N.E.2d 806.) A provision in a contract is not rendered ambiguous simply because parties do not agree on its meaning. (*Johnstowne Centre Partnership v. Chin* (1983), 99 Ill. 2d 284, 287, 458 N.E.2d 480.) Where the question before the court is one involving contract construction, a reviewing court may ascertain the meaning of contract provisions from the instrument itself, it having become a matter of law, not of

fact. *Newcastle Properties, Inc. v. Shalowitz* (1991), 221 Ill. App. 3d 716, 582 N.E.2d 1165.

As the court stated in *Du Quoin State Bank v. Daulby* (1983), 115 Ill. App. 3d 183, 185-86, 450 N.E.2d 347, 348-49:

> "The rules of construction applicable to contracts generally also apply to contracts of guaranty [citation] and if such a contract is unambiguous it must be enforced as written. [Citations.] These principles apply even in cases *** where the guaranty agreement contains broad statements of guarantor liability. [Citation.]"

■ A guarantor is not liable for anything which she did not agree to. A guarantor is given the benefit of any doubt which may arise from the language of the contract; her liability may not be varied or extended beyond its precise terms by construction or implication; and she is only bound to the extent and in the matter and under the circumstances pointed out in her obligation. *Exchange National Bank v. Bergman* (1987), 153 Ill. App. 3d 470, 505 N.E.2d 1236.

■ The terms of Holden's agreement are clear and unequivocal and thus must be carried out in accordance with its language. Had Holden wanted to limit the terms of the hypothecation agreement to prohibit renewal or to prohibit changes in the terms of Boulevard's loan with Zargarpoor, she could have done so by inserting those terms in the hypothecation agreement or by refusing to sign the agreement as written. The only limitation made in the hypothecation agreement is that Holden's liability is limited to $150,000 of loans to Zargarpoor. Holden entered into the agreement; neither the trial court nor this court may alter the terms of that agreement. The agreement must be enforced as written.

Accordingly, for all the reasons set forth above, we affirm the decision of the trial court.

Judgment affirmed.

LORENZ and GORDON, JJ., concur.