Sheri TRANCHITELLA,
Plaintiff/Appellant,

v.

BANK OF ILLINOIS IN DuPAGE,
Defendant/Appellee.

No. 95 C 3998.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 15, 1996.

Michael Alexander Cotteleer, Michael A. Cotteleer & Associates, Wheaton, IL, for plaintiff.

Uve R. Jerzy, Carolyn E. Winter, Richard L. Mandel, Mandel, Lipton & Stevenson, Ltd., Chicago, IL, for defendant.

*MEMORANDUM OPINION AND ORDER*

NORDBERG, District Judge.

Appellant Sheri Tranchitella appeals the November 29, 1994 and May 22, 1995 decisions entered by the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, in case number 94 A 100. The November 29, 1994 order granted partial summary judgment in favor of the Bank of Illinois in DuPage. The May 22, 1995 order stated that Sheri Tranchitella failed to meet her burden of proof on damages. This Court exercises jurisdiction pursuant to 28 U.S.C. § 158(a).

## I. FACTS

### A. Nature of the Case

This appeal arises from an adversary complaint filed by the Appellant Sheri Tranchitella ("Debtor"), on January 26, 1994, against Bank of Illinois in DuPage ("BOI") in the United States Bankruptcy Court, case number 94 A 100. On the same day that Debtor filed the adversary complaint, Debtor also filed a Chapter 13 petition under Title 11 of the United States Code, case number 94 B 1212. Debtor sought to set aside BOI's secured interest in the proceeds from the sale of the property held in BOI Land Trust 85–124 ("Land Trust 85–124"). Debtor sought a declaration that a guaranty given to BOI by Debtor on July 19, 1990, to secure the indebtedness of Debtor's husband, Terry Tranchitella ("Terry"), was unenforceable against Debtor. In this appeal, Debtor seeks the reversal of the Bankruptcy Court's November 29, 1994 denial to set aside BOI's secured claim and the Bankruptcy Court's subsequent denial of damages on May 22, 1995.

### B. The Course of the Proceedings and the Disposition in the Bankruptcy Court

On June 10, 1994, BOI filed a motion for summary judgment with respect to the allegations of Debtor's adversary complaint filed in the Bankruptcy Court on January 26, 1994. On August 29, 1994, Debtor filed a cross-motion for summary judgment. On November 17, 1994, the Bankruptcy Court ruled in favor of BOI on its motion for summary judgment, with the exception that, for reasons of ambiguity, the guaranty did not contain a valid waiver of notice by Debtor. The Bankruptcy Court's oral ruling of November 17, 1994 was entered as a written order on November 29, 1994. Debtor unsuccessfully sought leave to appeal this interlocutory order.

On May 21, 1995, the Bankruptcy Court held a hearing on the limited issue of Debtor's affirmative defense of lack of notice to

determine if she sustained damages as a result of BOI's failure to provide her with notice of Terry's default. On May 22, 1995, the Bankruptcy Court entered final judgment in favor of BOI, ruling that Debtor had failed to sustain her burden of proof for damages. Debtor now appeals from the orders of November 29, 1994 and May 22, 1995.

### C.  Statement of Facts

On June 21, 1985, Debtor and Terry, Debtor's spouse, executed a trust agreement with Bank of Villa Park (now known as BOI) ("Trust Agreement"), creating Land Trust 85–124. Land Trust 85–124 contained the marital residence of Debtor and Terry at 434 Kevin Drive, Addison, Illinois. Debtor and Terry were joint owners of 100% beneficial interest in Land Trust 85–124 with power and direction vested in the two jointly. On July 19, 1990, Debtor and Terry executed the "Collateral Assignment (and Security Agreement)" ("Guaranty") granting BOI a security interest in the beneficial interest of Land Trust 85–124. The Guaranty, which was signed by both Debtor and Terry and lodged with the trustee, established the contractual relationship between Debtor and BOI to be as follows:

> This assignment is made and given as a security for the prompt payment when due of any and all obligation of the ASSIGNORS and of N/A whether now made or to be made at any time in the future, including a certain loan made by Terry Tranchitella identified as No. 9640, Dated July 19, 1990 in the amount of $330,000.00; whether such obligations, indebtedness or liabilities are now existing or hereinafter created, direct or indirect, absolute or contingent, joint or several, due or to become due ... and any and all renewals, extensions, or refinancing thereof....

(Guaranty, ¶ 1).

In addition to the Guaranty, Debtor also executed on July 19, 1990, a Power to Hypothecate ("Power to Hypothecate" or "Hypothecation"). The Power to Hypothecate, signed by Debtor, pledged Debtor's interest in Land Trust 85–124:

> [A]s collateral for indebtedness of Terry Tranchitella now evidenced (in whole or in part) by note dated July 19, 1990 for $330,-000.00 ... who has consented to their use as collateral security for the indebtedness aforesaid and all renewals or extensions thereof; and also for any and all other indebtedness of the same debtor to you, created at any time before this consent shall have been revoked in writing and all renewals and extensions thereof and she waived notice of all or any such other indebtedness or extensions or renewals thereof.

(Hypothecation, ¶ 1).

Terry was obligated to BOI on loans made prior to July 19, 1990, the date on which the Guaranty and the Power to Hypothecate were executed. These prior loans include, but may not be limited to, loan numbers 9513, 9514, 9515, 9590 and 9640. Terry had been in default on some of the loans prior to July 19, 1990. Periodically, as loans became due, the loans were renewed and marked "paid by renewal."

Terry was engaged in the business of real estate development and home construction both individually, and as president of Lakewood Homes & Development Co. Funds loaned by BOI to Terry and his business were primarily used to acquire the lots on which he built homes for subsequent sale, and to provide working capital for the business. Titles to the construction lots were held in BOI Land Trust 90–259. Upon sale of each completed home, Terry executed a direction to convey, directing the land trustee to issue a trustee's deed to the purchaser and directing how the land trustee should distribute the proceeds of sale. Some of the directions to convey directed the land trustee to pay off the loan related to the lot deeded out of Land Trust 90–259, and the land trustee complied. It was in furtherance of this business purpose that Terry personally executed loan number 9640, dated July 19, 1990, in the amount of $330,000 in favor of BOI ("$330,000 Note"). The $330,000 Note was secured by a pledge of Debtor and Terry's residence held by Land Trust 85–124 and by a pledge of Lot 2, in Stonemill Estates, held by Land Trust 90–259 ("Lot 2").

BOI made a series of loans, loan renewals and loan consolidation transactions with Terry from July 19, 1990 through January 25, 1994. For example, on May 17, 1991, BOI loaned Terry $160,000, and Terry pledged Lot 2 in favor of BOI on that same date to secure the loan. On July 8, 1991, Lot 2 was transferred out of Land Trust 90–259 and sold to third parties, without notice to Debtor. Terry directed BOI to apply the proceeds from the sale of Lot 2, in the amount of $126,258.90, to the $160,000 loan. Terry also borrowed money from BOI to purchase an automobile, and on June 10, 1993, Terry was to pay $4,000 on the auto loan. On June 10, 1993, BOI did not collect the $4,000 payment, and, instead issued a new note in the amount of $4,000 to Terry, and secured the note with the beneficial interest of Land Trust 85–124.

During the course of divorce proceedings, Debtor and Terry contracted to sell their home. When Debtor and Terry requested the Trustee to issue a deed, BOI requested payoff of $169,126.07 in outstanding indebtedness due as of January 14, 1994. Debtor refused to authorize payment to BOI, and instead filed a third-party complaint in her divorce proceeding against BOI, seeking injunctive relief to compel BOI to issue a deed. The divorce court ordered BOI to issue the deed; however, the court ordered that the proceeds be placed in escrow pending further order of court. The net sale proceeds were placed in escrow at Mid–America Federal Savings in the amount of $195,883.20 as of March 31, 1995.

## II. ISSUES PRESENTED

On appeal from the Bankruptcy Court's November 29, 1994 order, Debtor raises four issues: (1) whether the Bankruptcy Court erred by finding that the contract of Guaranty between BOI and Debtor was ambiguous solely as to the issue of notice; (2) whether the Bankruptcy Court erred by failing to find that BOI, as creditor, had a duty to disclose material adverse facts to Debtor, as guarantor, resulting in a complete discharge of the Guaranty; (3) whether the Bankruptcy Court erred by failing to find that BOI, as land trustee, had breached its fiduciary duties to Debtor, as a beneficiary of the Land Trust,

resulting in a complete discharge of the Guaranty; and (4) whether the Bankruptcy Court erred by failing to find that the transactions conducted between BOI and Terry after July 19, 1990 materially altered the scope of Debtor's Guaranty, resulting in complete discharge of her Guaranty.

On appeal from the bankruptcy Court's May 22, 1995 order, Debtor raises the issue of whether the Bankruptcy Court erred by finding that Debtor failed to meet her burden of proof on the issue of damages.

## III. DISCUSSION

■ The district courts of the United States have jurisdiction to hear appeals from final judgments, orders and decrees of bankruptcy judges. 28 U.S.C. § 158(a). The district court reviews the factual findings of the bankruptcy court for clear error, but reviews the legal conclusions *de novo*. Fed. R.Bankr.P. 8013; *In re Rivinius, Inc.*, 977 F.2d 1171, 1175 (7th Cir.1992).

### A. November 29, 1994 Summary Judgment Ruling

In reviewing the Bankruptcy Court's November 29, 1994 order granting partial summary judgment in favor of BOI, the Court will only consider the record as it existed at the time of the Court's oral ruling on November 17, 1994. *In re Armorflite Precision, Inc.*, 48 B.R. 994, 997 (D.Me.1985).

■ Summary judgment is appropriate against a party who fails to make a sufficient showing to establish the existence of an essential element to its case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of identifying the portions of the record which it believes demonstrate the absence of a genuine issue of material fact and entitle it to judgment as a matter of law. *Id.* at 323, 106 S.Ct. at 2552–53; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). All the evidence submitted must be viewed in the light most favorable to the non-moving party. *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608.

Once a properly supported motion for summary judgment has been filed, the non-moving party must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). An issue of fact is genuine only if a jury could reasonably return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. at 2510. Only facts that might affect the outcome of the case are material. *Id.* Therefore, if the evidence provided by the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50, 106 S.Ct. at 2510–11.

## 1. The Issue of Ambiguity and the Guaranty

Debtor first claims that the Bankruptcy Court erred in finding that a valid and enforceable guaranty was created between BOI and Debtor. This Court affirms the finding of the Bankruptcy Court. Debtor pledged her interest in Land Trust 85–124 to secure the indebtedness of her husband, Terry, to BOI. The Guaranty, along with the Power to Hypothecate, define the provisions of the agreement between Debtor and BOI.

Under Illinois law, the rules of construction applicable to contracts apply to guaranties. *Holden v. Nat'l Boulevard Bank of Chicago*, 231 Ill.App.3d 26, 172 Ill.Dec. 768, 773, 596 N.E.2d 47, 52 (1992); *McLean County Bank v. Brokaw*, 119 Ill.2d 405, 116 Ill.Dec. 561, 564, 519 N.E.2d 453, 456 (1988). In addition, "[a] guarantor is to be accorded the benefit of any doubt which may arise from the language of the contract, and [the guarantor's] liability is not to be varied or extended by construction or implication beyond its precise terms." *Hensler v. Busey Bank*, 231 Ill.App.3d 920, 173 Ill.Dec. 390, 395, 596 N.E.2d 1269, 1274 (1992). In interpreting a guaranty as a contract, the Court

first determines, as a matter of law, whether the contract is ambiguous or unambiguous. *Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1389 (7th Cir.1993). Where the language of a contract is clear and unambiguous, the agreement between the parties is taken from the four corners of the documents. *Holden*, 172 Ill.Dec. at 773, 596 N.E.2d at 52; *Hickey*, 995 F.2d at 1389. The Court may grant summary judgment if the terms of the contract foreclose a genuine issue of material fact. *Hickey*, 995 F.2d at 1389. Where the Court finds that the contract is ambiguous, the Court must consider extrinsic evidence to determine whether there is a genuine issue of material fact as to the meaning of the contract. *Hickey*, 995 F.2d at 1389. The Court may grant summary judgment if the undisputed extrinsic evidence conclusively establishes the intent of the parties. *Id.* at 1289–90; *see also Nat'l Distillers and Chemical Corp. v. First Nat'l Bank of Highland Park*, 804 F.2d 978, 982 (7th Cir.1986).

In the instant case, Debtor argues that the specific language of the Guaranty provides that all that is secured by the precise terms of the Guaranty is the $330,000 Note and any future obligations which would be made jointly by Terry and Debtor as the "Assignors." Because Terry and Debtor have not jointly executed any notes in favor of BOI, Debtor claims that the Guaranty only extends to the $330,000 Note made to Terry. BOI asserts that the Guaranty secured all of the indebtedness of Terry to BOI, including all existing loans and all new loans made by BOI to Terry.

The Court finds that the Guaranty is unambiguous as to its provision that the beneficial interest of Land Trust 85–124 secures all loans made by BOI to Terry. Furthermore, even if the Guaranty was ambiguous, the Court finds that extrinsic evidence in the form of the Power to Hypothecate shows that there is no genuine issue of material fact as to the meaning of the Guaranty except as to the issue of notice.[1]

---

1. The Guaranty itself does not specify whether Debtor waived notice of default. The Power to Hypothecate specifically provides that, Debtor waived notice of any new loans, extensions or renewals made by BOI to Debtor. (Hypotheca-

tion, ¶ 1). The Bankruptcy Court found that the Power to Hypothecate was ambiguous in its "waiver" provision. The Bankruptcy Court explained that, a waiver must be knowing and intentional. Because the Hypothecation was

The Guaranty was signed by both Debtor and Terry on July 19, 1990, and lodged with the land trustee on that same day. The language of the Guaranty that is in dispute is as follows:

> This assignment is made and given as a security for the prompt payment when due of any and all obligations of the AS-SIGNORS and of N/A whether now made or to be made at any time in the future, including a certain loan made by Terry Tranchitella identified as No. 9640, Dated July 19, 1990 in the amount of $330,000.00; whether such obligations, indebtedness or liabilities are now existing or hereinafter created, direct or indirect, absolute or contingent, joint or several, due or to become due ... and any and all renewals, extensions, or refinancing thereof....

(Guaranty, ¶ 1).

The Guaranty defines the term "Assignors" to be the "undersigned." (Guaranty, preamble). In addition, the Guaranty provides that, "[i]f two or more persons sign this agreement, ... wherever any reference is made herein to ASSIGNORS such reference shall include all such persons, joint and severally." (Guaranty, ¶ 13). According to Black's Law Dictionary, the term "several" means "separate; individual; independent." Black's Law Dictionary 1374 (6th ed.1990). Terry and Debtor both signed the Guaranty in their individual capacities. The term "Assignors" therefore refers to Terry and Debtor, both jointly and individually. Accordingly, in referring to loans made by the "Assignors," the Guaranty covered loans made to Terry as an individual, as well as any loans made to Terry and Debtor jointly. In addition, the language of the Guaranty stated that the loans secured under the Guaranty "includ[ed] a certain loan made by Terry Tranchitella." (Guaranty, ¶ 1). By using the term "including" before referring to the $330,000 Note, the parties made clear that the set of loans secured by the Guaranty were those made by Terry individually. Finally, the term "N/A" was filled in the

blank space available for listing parties, other than the "Assignors," to whom loans secured by Land Trust 85–124 may be made. The term "N/A" means the Guaranty did not secure loans made to third parties, but only loans made to Terry or Debtor as the "Assignors."

■ Furthermore, even if the language of the Guaranty was ambiguous, extrinsic evidence shows that there is no genuine issue of material fact as to the intent of the parties. The Court has considered the Power to Hypothecate as extrinsic evidence on the meaning of the provisions in the Guaranty.

The Power to Hypothecate, signed by Debtor, pledged Debtor's interest in Land Trust 85–124 to BOI:

> [A]s collateral for indebtedness of Terry Tranchitella now evidenced (in whole or in part) by note dated July 19, 1990 for $330,-000.00 ... who has consented to their use as collateral security for the indebtedness aforesaid and all renewals or extensions thereof; and also for any and all other indebtedness of the same debtor to you, created at any time before this consent shall have been revoked in writing and all renewals and extensions thereof and she waived notice of all or any such other indebtedness or extensions or renewals thereof.

(Hypothecation, ¶ 1).

The Power to Hypothecate is undisputed extrinsic evidence which shows that there is no genuine issue of material fact that the intent of Debtor and BOI in executing the Guaranty was that all indebtedness of Terry, as an individual, to BOI is secured by the beneficial interest in Land Trust 85–124.

Debtor argues that the Power to Hypothecate is invalid for two reasons. First, Debtor claims that the Hypothecation, which was signed only by Debtor and not lodged with the trustee, is a document specifically prohibited by the language of the Trust Agreement, which requires both Debtor and Terry to

---

"difficult to understand with its mistakes and syntax and tense," the Bankruptcy Court found that Debtor did not knowingly execute her waiver. (Transcript, October 13, 1994, p. 4). Accordingly, the Bankruptcy Court held a trial sole-

ly on the issue of damages resulting from BOI's failure to notify Debtor of Terry's defaults. BOI has not appealed the Bankruptcy Court's finding that the loan documents were ambiguous as to the issue of Debtor's waiver of notice.

sign a Hypothecation as beneficiaries. Second, Debtor claims that the Hypothecation violates Paragraph Six of the Guaranty, which prohibits Debtor from hypothecating the beneficial interest in the Land Trust.

The Court need not resolve this issue because the Court has considered the Power to Hypothecate only as extrinsic evidence. Therefore, it is immaterial whether the Power to Hypothecate itself is enforceable as long as it is evidence of the parties' intent in executing the Guaranty. The Court finds that the Hypothecation is undisputed evidence of the parties' intent. The authenticity of the Power to Hypothecate, which was signed by Debtor, is undisputed. Furthermore, Debtor herself argues that the Hypothecation merges into the Guaranty because it accomplishes the same result as the Guaranty, and BOI argues that the Hypothecation "mirrors" the Guaranty. Therefore, even if the Hypothecation is unenforceable as a trust document based on the language in the Trust Agreement or the language in Paragraph Six of the Guaranty, the Hypothecation is undisputed extrinsic evidence that the parties intended all of Terry's indebtedness to be secured by the beneficial interest in the Land Trust.

### 2. The Issue of Whether BOI had a Duty to Disclose Material Adverse Facts

■ Debtor argues that BOI had a duty to disclose to her that Terry had been in default, and continued to be in default, on loans given to Terry by BOI before the Guaranty was executed. The Guaranty specifies that the beneficial interest in Land Trust 85–124 is given as security not only for the $330,000 Note to Terry and subsequent loans made to Terry by BOI, but also for the "obligations, indebtedness or liabilities that are now existing." (Guaranty, ¶ 1).

In *McLean County Bank v. Brokaw*, 119 Ill.2d 405, 116 Ill.Dec. 561, 564, 519 N.E.2d 453, 456 (1988), the defendants signed a guaranty agreement in which they promised to pay a maximum principal amount if the debtor defaulted "whether such indebtedness is now existing or arises hereafter." The court found that, "such language has been held to constitute a continuing guaranty to

cover past, present and future debts, up to the specified amount." *Id.* (citations omitted). Similarly, in the instant case, Debtor pledged in her Guaranty to pay a maximum principal amount if Terry defaulted on "indebtedness or liabilities [that] are now existing or hereinafter created." (Guaranty, ¶ 1). As in *McLean*, Debtor pledged her beneficial interest in the Land Trust to secure Terry's obligations existing on July 19, 1990, the date the Guaranty was executed.

Furthermore, even if the Guaranty was ambiguous as to the intent of the parties regarding pre-existing loans made by BOI to Terry, the Power to Hypothecate, when considered as extrinsic evidence, shows that Debtor agreed that all existing loans from BOI to Terry were secured by the Guaranty. The Power to Hypothecate provides that the beneficial interest in Land Trust 85–124 is to be used as security for all of Terry's indebtedness "created at any time before this consent shall have been revoked in writing." (Hypothecation, ¶ 1). Therefore, the Court finds that there is no genuine issue of material fact that Debtor is a guarantor to those loans to Terry that existed at the time Debtor executed the Guaranty, some of which had been or continued to be in default.

■ Debtor argues that BOI had a duty to tell her that Terry had been in default on the loans that existed at the time the Guaranty was executed. As a matter of law, a creditor does not have a fiduciary duty to disclose to a guarantor all material facts affecting the guarantor's risk. *St. Charles Nat'l Bank v. Ford*, 39 Ill.App.3d 291, 349 N.E.2d 430, 434 (1976); *Continental Bank N.A. v. Everett*, 760 F.Supp. 713, 717 (N.D.Ill.1991). However, a duty of good faith is implied in every contract, and the duty of good faith may require a creditor to tell a guarantor circumstances that may materially increase the guarantor's risk. *McLean*, 116 Ill.Dec. at 566, 519 N.E.2d at 458 (citing Restatement of Security § 124 (1941)). The court in *McLean* limited this holding by specifying that a creditor is not required "to take unusual steps to assure himself that the surety is acquainted with facts which he may assume are known to both of them." *Id.* (quoting Restatement of Security § 124,

comment b (1941)). Moreover, the Court in *Everett* implied that the creditor's duty to disclose extends only to those cases where the creditor takes an action that increases the guarantor's risk, or where the creditor actively conceals material facts from the guarantor. *Everett*, 760 F.Supp. at 717.

Illinois courts have commented that there are no Illinois cases in which a creditor was dealing in bad faith because it did not disclose to a guarantor information which materially increased the risk on the guaranty. *Everett*, 760 F.Supp. at 718 (noting that "Defendants have not cited any Illinois cases in which a creditor was deemed to have acted in bad faith by failing to disclose information relating to the risk of the guaranty"); *Morris v. Columbia Nat'l Bank of Chicago*, 79 B.R. 777, 785 n. 9 (N.D.Ill.1987) (noting that, "Illinois courts have not addressed any cases where a creditor was found to be dealing in bad faith because it did not inform a guarantor of factors which materially increased the risk on the guaranty"). Furthermore, Illinois courts have held that "[n]otwithstanding [the creditors] duty of good faith, [guarantors] have an obligation to make an inquiry into all circumstances that are relevant to their risk as guarantors." *Everett*, 760 F.Supp. at 718; *St. Charles*, 349 N.E.2d at 434 (holding that a surety must make an inquiry as to all the facts affecting his or her risk).

The instant case is analogous to that of *Everett* where the court found that the guarantors' failure to inquire into the facts affecting their risk precluded them from claiming that the creditor acted in bad faith by failing to disclose to them information regarding their risks as guarantors. *Everett*, 760 F.Supp. at 717–18. The guarantors in *Everett* claimed that the creditor should have told them that the debtor could not obtain a security interest in one of the pieces of collateral that was allegedly securing the debtor's loans. *Id.* at 718. The court found that, because there was no evidence that the creditor had concealed material facts from the guarantors, and because the information regarding the guarantors' risk was available from other sources, the creditor had no duty to disclose the information. *Id.* at 717–18.

Similarly, in this case, Debtor has not presented evidence that BOI tried to conceal information regarding Terry's repayment status of loans made to Terry before the Guaranty was executed. Furthermore, when Debtor did not ask BOI for information regarding Terry's existing obligations, BOI was reasonable in assuming that Debtor, as Terry's wife, had available to her information regarding Terry's prior defaults on certain loans. *McLean*, 116 Ill.Dec. at 565, 519 N.E.2d at 457 (where parents acted as guarantors for loans to their son, the court stated that the creditor was not required "to take any unusual steps to assure himself that [the parents were] acquainted with facts which [the creditor] may assume are known to both of them"). Accordingly, the Court finds that BOI did not breach its duty of good faith by failing to disclose to Debtor facts relating to Terry's prior defaults when she signed the guaranty documents.

### 3. The Issue of Whether BOI Owed Fiduciary Duties to Debtor

██ Debtor claims that BOI, as the trustee of Land Trust 85–124, breached its fiduciary duty owed to her as a beneficiary of Land Trust 85–124. Debtor argues that a conflict of interest arose between the administration of Land Trust 85–124 and the administration of Terry's loans because BOI permitted the same persons who service the loan operations at the bank to also serve as the land trust officers at the bank. According to Debtor, this alleged conflict of interest was evidenced by two sets of facts. First, Debtor argues that BOI did not refer to Terry's prior loans, even though Terry had a history of defaults, in the loan documents. Second, Debtor complains that BOI presented to Debtor the Power to Hypothecate to sign, even though the Hypothecation gave Terry control over Debtor's interest in the Land Trust. In addition, Debtor claims that the Hypothecation needed to be signed by Terry, as a beneficiary of the Land Trust, according to the requirements of the Trust Agreement, but BOI did not obtain Terry's signature.

The Illinois Supreme Court held in *Home Federal Savings and Loan Ass'n v. Zarkin*, 89 Ill.2d 232, 59 Ill.Dec. 897, 901, 432 N.E.2d

841, 845 (1982) that land trustees are "subject to the fiduciary duties imposed by the law on all trustees." In addition, the court in *Zarkin* held that when a land trustee acts as a creditor and uses the trust property in its possession as collateral, the trustee has the burden of showing that it did not breach its fiduciary duty and that the transaction was fair. *Kress Road Partnership v. Chicago Title and Trust Co.*, 134 B.R. 292, 298 (Bankr.N.D.Ill.1991) (citing *Zarkin*, 59 Ill. Dec. at 901, 432 N.E.2d at 845). In response to *Zarkin*, the Illinois legislature enacted the Land Trust Act which provides in part:

> The fact that a trustee of a land trust is or becomes a secured or unsecured creditor of the land trust, the beneficiaries of the land trust, ... shall not be a breach of, and shall not be deemed evidence of a breach of, any fiduciary duty owed by said trustee to the beneficiaries.

765 ILCS 415/3.

Several Illinois courts have held that, "the Land Trust Act does not remove all fiduciary duties of a land trustee." *Kress Road*, 134 B.R. at 299 (citing *Slovick v. All American Bank of Chicago*, 163 Ill.App.3d 741, 114 Ill.Dec. 792, 795, 516 N.E.2d 947, 950 (1987); *Volini v. Dubas*, 190 Ill.App.3d 954, 138 Ill. Dec. 498, 500, 547 N.E.2d 665, 667 (1989)). However, the parties do not cite, nor has this court found, an Illinois case where the trustee breached its fiduciary duty by allowing the same persons to serve as the land trust officers and as the loan operations officers.

Debtor asserts, without authority, that there is an "inherent conflict of interest" in the fact that the same persons had duties to her as trust officers and as loan officers. Such an assertion was explicitly overruled by the Illinois legislature when it stated that it is not a breach, nor is it evidence of a breach, of the trustee's fiduciary duty when the trustee becomes the beneficiary's creditor. 765 ILCS 415/3. The statute does not imply that the trustee may only be an entity that employs a sufficient number of employees to staff its loan department and trust department with different people. Instead, under the Illinois statute, the land trustee may be an individual who is both the trustee and a creditor of the beneficiary. Accordingly, the Court finds that BOI did owe Debtor a fiduciary duty; however, BOI did not breach its fiduciary duty per se by permitting the same persons to act as trust officers and as loan officers.

■ Although BOI did not breach its fiduciary duty per se, Debtor may show that specific acts committed by BOI, through its trust officers, constituted a breach of its fiduciary duty to Debtor. First, Debtor asserts that BOI's alleged breach of fiduciary duty was evidenced by the fact that BOI did not refer to Terry's prior loans with BOI in the Guaranty. In response, the Court finds that BOI does make reference to Terry's prior loans in the Guaranty in that the language of the Guaranty specifically states that the collateral is pledged for "indebtedness or liabilities now existing or hereafter created." (Guaranty, ¶ 1).

■ Second, Debtor complains that BOI breached its fiduciary duty in allowing Debtor to sign the Power to Hypothecate and in failing to have Terry sign the Power to Hypothecate. (Debtor's Brief on Appeal, pp. 24–25). Such an argument is inconsistent, immaterial and without merit. Debtor claims that BOI breached its fiduciary duties by giving Debtor the Power to Hypothecate to sign when the Trust Agreement required that both Debtor and Terry sign as joint beneficiaries of the Land Trust. This act is not a breach of BOI's fiduciary duty because the Guaranty, signed by both Terry and Debtor, and lodged with the Trustee, assigns the beneficial interest in the land trust to BOI as security for Terry's loans. Therefore, the Power to Hypothecate, if valid, is duplicative. As a result, failing to have both Terry and Debtor sign the Power to Hypothecate was inconsequential.

Furthermore, the Court notes that it was Debtor's prerogative as the beneficiary of the Land Trust to execute both the Hypothecation and the Guaranty. Essentially, Debtor argues that BOI was under a duty to stop her from entering into a risky business venture. BOI, as trustee of Land Trust 85–124, was obligated to follow the direction of Debtor and Terry when they pledged their beneficial interest in the Land Trust and lodged

the Guaranty with BOI. The Court notes that, had BOI acted without proper authorization, Debtor may have a claim for breach of fiduciary duty. Under Illinois law, "if a land trustee is aware that the person with the power of direction is exercising his power improperly, the trustee should refuse to act and can be liable if it acts despite such awareness." *Kress Road,* 134 B.R. at 299 (finding that there were no facts alleged that the trustee knew, or had reason to know, that a general partner of a limited partnership, which was the beneficiary of the trust, did not have the authority to act for the beneficiary); *In re Grabill Corp.,* 121 B.R. 983, 1000 (Bankr.N.D.Ill.1990) (finding that the corporation had stated a claim for breach of fiduciary duty by alleging that the trustee knew that it was acting without proper authorization, to the detriment of the beneficiary of the trust). BOI acted under the proper authority of the beneficiaries of Land Trust 85–124 in pledging the beneficial interest in the Trust as collateral for loans made to Terry. Therefore, BOI did not breach its fiduciary duty owed to Debtor.

### 4. The Issue of Material Alteration of the Guaranty

Debtor claims that BOI materially altered the scope of her Guaranty and, therefore, Debtor's entire obligation to BOI under the Guaranty should be discharged. Debtor claims that the following acts by BOI caused a material alteration in Debtor's risk: (1) BOI made Debtor liable for loans, other than the $330,000 Note, that were made to Terry after the Guaranty was executed; (2) BOI secured a $4,000 balance due from Terry on his auto loan with the beneficial interest of the Land Trust; (3) BOI released collateral without Debtor's consent; and (4) BOI did not inform Debtor that Terry was involved in a profitable business venture.

"Under Illinois law, once a creditor and guarantor form a guaranty contract, any agreement between the debtor and creditor which 'varies the terms of the principal obligation, increases the guarantor's risk or deprives the guarantor of the opportunity to protect himself will result in a discharge pro tanto of the guarantor from his obligation.'" *Boulevard Bank Nat'l Ass'n v. Philips Medi-cal Systems Int'l B.V.,* 811 F.Supp. 357, 362 (N.D.Ill.1993) (citing *McHenry State Bank v. Y & A Trucking, Inc.,* 117 Ill.App.3d 629, 73 Ill.Dec. 485, 488, 454 N.E.2d 345, 348 (1983)). The Court finds that BOI has not performed any acts which have varied the terms of the Guaranty or which have materially altered Debtor's risk, and, therefore Debtor is not discharged from her obligations under the Guaranty. The Court addresses each of Debtor's claims of material alteration below.

■ First, Debtor argues that BOI has materially altered the terms of her Guaranty by attempting to make Debtor liable for all of Terry's loans, and, as a result of this alteration, Debtor's obligations as guarantor are discharged. As set forth above, under the Guaranty, Debtor pledged as security for all of Terry's existing and future loans the beneficial interest in Land Trust 85–124. In Illinois, "[t]he enforcement of contractual rights cannot be considered a material alteration of the underlying entity and obligation." *Federal Deposit Insurance Corp. v. Brent Resources Group, Ltd.,* 85 C 10143, 1986 WL 11998 at *3 (N.D.Ill. Oct. 17, 1986) (finding that neither the underlying obligation nor the guaranty had been materially altered given the broad wording of the guaranty); *Ford Motor Credit Co. v. Devalk Lincoln–Mercury, Inc.,* 600 F.Supp. 1547, 1553 n. 2 (N.D.Ill. 1985) (finding that there were no alterations in the nature of the principal obligation because the creditor acted within its contractual rights under the guaranty). Therefore, Debtor's argument that BOI materially altered the Guaranty by making Debtor liable for all of Terry's loans is without merit.

Moreover, in the instant case, there was no limit in the Guaranty on the amount of new loans or extensions that BOI could make to Terry or Debtor. The Guaranty, however, did provide that the liability of Debtor, as guarantor, was limited to the value of Debtor's beneficial interest in Land Trust 85–124. Debtor may only be held liable to the extent of her pledge, regardless of the amount of credit extended by BOI. Therefore, the fact that BOI extended credit to Terry in excess of the value of her beneficial interest in the Land Trust did not materially alter the scope of the Guaranty. Under Illinois law, "[i]n

the absence of an expressed intention in the contract that the ... [specified credit limit is] ... to be ... an absolute condition of the guarantor undertaking, the extension of credit beyond that amount does not discharge or release the guarantor...." *Boulevard Bank Nat'l Ass'n v. Philips Medical Systems Int'l B.V.*, 15 F.3d 1419, 1425 (7th Cir.1994) (citing *McLean County Bank v. Brokaw*, 119 Ill.2d 405, 116 Ill.Dec. 561, 565, 519 N.E.2d 453, 457 (1988)); *Union Carbide Corp. v. Katz*, 489 F.2d 1374, 1376 (7th Cir. 1973) (finding that the guarantor was not released from his obligations where the limitation in the guaranty was on the guarantor's total liability and not a limitation on the creditor's extension of credit). Accordingly, the Court finds that the additional loans made to Terry did not materially change the Debtor's risk because such loans were provided for in the Guaranty, and because Debtor's liability is limited to the value of her beneficial interest in Land Trust 85–124, regardless of the amount of loans extended to Terry.

■ Second, Debtor claims that BOI materially altered the terms of the Guaranty by securing a $4,000 balance due from Terry under his auto loan with the beneficial interest of Trust 85–124. Under the terms of the Guaranty, as explained above, any indebtedness of Terry to BOI was secured by the beneficial interest in Land Trust 85–124. Therefore, it was not a material alteration in the loan documents to use the interest in the Trust as collateral for the auto loan which was made to Terry by BOI. In addition, Debtor asserts that the $4,000 loan was the result of BOI's negligence in failing to obtain a $4,000 payment from Terry when he renewed his auto loan. However, Debtor fails to show how BOI was negligent in failing to obtain payment on the auto loan from Terry. There is no evidence that BOI had a duty to obtain $4,000 from Terry rather than to lend him this additional amount.

■ Third, Debtor claims that BOI materially altered her risk as a guarantor because it released collateral without her consent. Specifically, the $330,000 Note to Terry was secured by both the beneficial interest in Land Trust 85–124, pursuant to the Guaran-

ty, and by a pledge of the beneficial interest in Land Trust 90–259. The collateral in Trust 90–259 was Lot 2 in Stonemill Estates. On July 8, 1991, BOI caused Lot 2 to be transferred out of Trust 90–259 and sold to third parties without notice to Debtor. BOI then applied the proceeds of the sale of Lot 2, as directed by Terry, the beneficial owner of Trust 90–259. Terry directed that the proceeds in the amount of $126,258.90 be applied to a loan made to Terry by BOI in the amount of $160,000. The $160,000 loan was made to Terry on May 17, 1991 and secured by the beneficial interests of both Trust 85–124 and Trust 90–250. Debtor now argues that she is entitled to a pro tanto discharge in the amount of $126,248.90 of any loan secured by the Guaranty. Debtor's argument is flawed because she fails to realize that the beneficial interest in Trust 85–124 secured both the $330,000 loan and the $160,-000 loan made to Terry by BOI. Therefore, it made no difference in Debtor's liability to BOI whether the proceeds from the sale of Lot 2 were applied to the $330,000 Note or the $160,000 loan. Accordingly, the Court finds that it was not a material alteration in Debtor's risk to apply the proceeds of the sale of Lot 2 to the $160,000 loan to Terry instead of the $330,000 Note to Terry.

■ Finally, Debtor claims that BOI materially altered the terms of Debtor's Guaranty by not informing her that Terry was involved in an allegedly profitable business venture. Specifically, Debtor claims that BOI knew that Terry was a silent partner in TraCor Custom Homes, Inc. and that the partnership had made "substantial profits," yet BOI did not attempt to recover loan payments from the partnership. This argument was not raised by Debtor in the summary judgment proceedings before the Bankruptcy Court, and, therefore, the argument can not be considered on appeal. *Matter of Kroner*, 953 F.2d 317, 319–20 (7th Cir.1992) (holding that arguments not made to the bankruptcy court are waived on appeal).

■ Even if the Court could consider Debtor's allegations on appeal, Debtor has failed to show how her husband's business venture altered the scope of her Guaranty.

Evidence that BOI foreclosed on the property which was pledged as collateral for BOI's loans to Terry, rather than trying to foreclose on a silent partnership interest that was not pledged as collateral for BOI's loans to Terry, is not evidence of bad faith or collusion. BOI did not make any additional loans to Terry after it learned of Terry's business venture, nor did the bank immediately foreclose on the beneficial interest of Land Trust 85–124. Debtor's allegations of collusion between BOI and Terry are based on pure speculation. Accordingly, even if the Court could consider Debtor's argument on appeal, there is no evidence that the existence of Terry's silent partnership altered the terms of Debtor's Guaranty.

The Court affirms the Bankruptcy Court's November 29, 1994 order which partially granted BOI's Motion for Summary Judgment. The Court affirms the finding that a valid and enforceable guaranty was created between BOI and Debtor on July 19, 1990, that the Guaranty between BOI and Debtor was ambiguous solely as to the issue of notice, and that the transactions conducted between BOI and Terry after July 19, 1990 did not materially alter the scope of Debtor's Guaranty.

### B. May 22, 1995 Damages Ruling

■ Debtor claims that the Bankruptcy Court erred by finding that Debtor failed to meet her burden of proof at trial on the issue of damages. On May 22, 1995, the Bankruptcy Court held a trial solely on the issue of damages. The court held that BOI's recovery would be reduced by the amount of loss that the Debtor could prove resulted from BOI's lack of notice of default. The Bankruptcy Court relied on the case of *Juzwik v. Juzwik,* 140 Ill.App.3d 644, 94 Ill.Dec. 926, 929–30, 488 N.E.2d 1319, 1322–23 (1986) in stating that, "although there is no duty to give notice of default as a prerequisite for bringing a cause of action based on a guarantee, the failure of a party holding a guarantee to notify the guarantor of the obligor's default does provide a defense to the extent of any loss or damage sustained as a result of such failure to give notice of default." (Transcript, November 17, 1994, p. 4). Accordingly, the Bankruptcy Court specified that, at trial, Debtor had the burden of proving (1) when default first occurred on which the bank could take action; (2) the value of her interest in the collateral on that date; (3) the outstanding indebtedness to BOI on that date; and (4) what Debtor could have done, if anything, to spare her loss. (Transcript, November 17, 1994, p. 6; Transcript, May 22, 1995, pp. 4–6).

■ As an initial matter, the Bankruptcy Court found that it is unclear when default first occurred. The Bankruptcy Court held that even if the date of default had been established, Debtor did not prove what action she would have taken had BOI notified her of Terry's default. The Bankruptcy Court held:

There is no proof as to what would have occurred at the time of the failure to give notice of default as to what she would have done and what the results would have been.

Let's assume, although there is no proof that I saw in the record, what she would have done would have been to declare her unwillingness to go along with any further extensions of credit to her husband. She would not have guaranteed any further loans, and let's assume that in response to that the bank would have immediately foreclosed on its security interest in her residence. There is no proof as to what the amount of the outstanding debt was at that time and what the value of the residence was at that time. Without evidence focusing on that I can't make the determination.

(Transcript, March 22, 1995, pp. 5–6). The Bankruptcy Court further held that, "[f]or me to look at the record as it exists right now and try to draw conclusions concerning these points would be as the Bank of Illinois has argued to engage in speculation which would not be appropriate." (Transcript, May 22, 1995, p. 6). This Court must accept the Bankruptcy Court's findings of fact unless the findings are clearly erroneous. Fed. R.Bankr.P. 8013; *In re Rivinius, Inc.,* 977 F.2d 1171, 1175 (7th Cir.1992).

■ Under Illinois law, "[f]ailure to notify a guarantor of the debtor's default has no other effect than to afford [the guarantor]

a defense to the extent of the loss or damage sustained as a result of such failure." *Mid–City Industrial Supply Co. v. Horwitz*, 132 Ill.App.3d 476, 87 Ill.Dec. 279, 285, 476 N.E.2d 1271, 1277 (1985); *Juzwik*, 94 Ill.Dec. at 929–30, 488 N.E.2d at 1322–23. The guarantor has the burden of proving that she was damaged by the lack of notice. *Horwitz*, 87 Ill.Dec. at 285, 476 N.E.2d at 1277. The measure of damages in this case, is the difference between the amount due to the creditor on the date of default and the value of the guarantor's interest in the collateral on that date.[2]

The Court notes that all of Debtor's arguments regarding damages are faulty because they are based on the premise that the Guaranty was pledged solely for the $330,000 Note, when, in fact, Debtor's pledge secured all the indebtedness of Terry. The Bankruptcy Court made it abundantly clear to the parties before trial and at the time of trial that Debtor's obligations under the Guaranty were for all of Terry's indebtedness to BOI, limited only to her interest in Land Trust 85–124. (Transcript, March 21, 1995, pp. 16, 46, 70–71).

### 1. Date of Default

Debtor asserts that BOI failed to submit evidence to the Bankruptcy Court to support an exact date of default by Terry. BOI, however, does not have the burden of introducing evidence on this issue because Debtor, as the guarantor, has the burden of proving by a preponderance of the evidence that she suffered a loss as a result of BOI's failure to notify her of Debtor's default. *See Horwitz*, 87 Ill.Dec. at 285, 476 N.E.2d at 1277. Debtor attempts to establish the date on which default occurred by claiming that the date of the first material breach of the duty of notice was July 19, 1991. July 19, 1991 was the date on which the $101,022 unpaid balance of the $330,000 Note was renewed.

The Court holds that the Bankruptcy Court's finding that Debtor failed to establish by a preponderance of the evidence when default occurred was not clearly erroneous. There was no way for the Bankruptcy Court to determine the exact date of default from the evidentiary record. As of July 19, 1990, the date Debtor executed the Guaranty, Terry was obligated to BOI on at least four loans other than the $330,000 Note, including loan numbers 9513, 9514, 9515 and 9590 (which together with the $330,000 Note totalled over $430,000 on July 19, 1990). Loan number 9590 and the $330,000 Note were admitted into evidence, but only the account ledgers for loan numbers 9513, 9514 and 9515 were admitted. Because the loan documents stating the terms and conditions of loans 9513, 9514 and 9515 were not admitted into evidence, the date of default on these loans can not be determined. Furthermore, the record is unclear as to whether these five loans represented the total indebtedness of Terry at the time of default, so there may have been other loans on which Terry had defaulted since July 19, 1990. In any event, evidence at trial showed that Terry had defaulted on loan number 9590 on July 27, 1990. Therefore, Debtor's assertion that July 19, 1991 is the relevant date of default is not supported by the evidence, which shows that default must have occurred on or prior to July 29, 1990.[3]

The Bankruptcy Court could not determine when defaults occurred under the terms and conditions of default on all of Terry's loans that were secured by the Guaranty because Debtor failed to present sufficient evidence regarding the loans extended to Terry. Without any proof of when Terry first defaulted, any determination of damages would have been conjecture and speculative, and, therefore, the Bankruptcy Court appropriately denied damages. *Finance America Commercial Corp. v. Econo Coach, Inc.*, 118 Ill.App.3d 385, 73 Ill.Dec. 878, 882, 454 N.E.2d 1127, 1131 (1983) (damages may not

2. Debtor does not argue, nor is there any evidence in the record, that Debtor owned assets other than the beneficial interest in Land Trust 85–124 at the time of default.

3. The Court notes that BOI first notified Terry of default in a letter requesting payment on August 9, 1991. The Bankruptcy Court held that the relevant date regarding the issue of damages for lack of notice is the date when actual default first occurred. Neither BOI nor Debtor appeals this determination.

be awarded on the bases of speculation or conjecture); *Alover Distributors, Inc. v. Kroger Co.,* 513 F.2d 1137, 1141 (7th Cir.1975) (same).

### 2. Total Outstanding Indebtedness on Date of Default

Even if Debtor were able to prove an exact date of default, the Court finds that the Bankruptcy Court was not clearly erroneous in finding that Debtor failed to establish the total outstanding indebtedness. Debtor did not prove the amount of indebtedness for either July 19, 1991, the date on which Debtor alleges that default first existed, or July 17, 1990, the date on which the evidence at trial shows that default existed. The testimony at trial showed that when Debtor signed the Guaranty, there were other loans outstanding, in addition to the $330,000 Note. (Transcript, March 21, 1995, p. 53). Without proof of Terry's total indebtedness, Debtor can not prove damages as a result of BOI's failure to notify her of Terry's default.[4]

### 3. Value of Collateral on Date of Default

The Bankruptcy Court was not clearly erroneous in its finding that Debtor failed to introduce evidence to establish the value of the property in Land Trust 85–124 on any date of default. Debtor claims that the sale price of her residence, which was held in the Land Trust, in January of 1994 is sufficient to establish the fair market value of her interest in the Land Trust on the date of default.

In determining damages, the goal is to put Debtor in the same position that she would have been had BOI notified her of Terry's defaulted loans. *See Bachewicz v. American Nat'l Bank and Trust Co. of Chicago,* 126 Ill.App.3d 298, 81 Ill.Dec. 294, 305, 466 N.E.2d 1096, 1107 (1984) (holding that the damages award should not provide the non-breaching party with a windfall recovery), *rev'd on other grounds,* 111 Ill.2d 444, 95 Ill.Dec. 827, 490 N.E.2d 680 (1986). In *Bachewicz,* the trial court based its damage award for a breach of contract action on the sale price of the property at issue. The appellate court reversed the damage award because the sale of the property had taken place one year after the breach of contract occurred. *Id.* The court held that the "time differential, while not conclusive, is a definite factor in determining whether the [ ] sale reasonably reflects fair market value on the date of the breach, one year earlier." *Id.* 81 Ill.Dec. at 304–05, 466 N.E.2d at 1106–07.

In the instant case, there is at least a three year time lag between the date of the sale of the property and the date of default. Without more evidence regarding whether there was a change in property value during the three year or more time lag, the Court can not conclusively determine whether the sale price in 1994 is sufficient evidence of fair market value at the time when BOI failed to give notice.

### 4. Debtor's Actions on Date of Default

Finally, the Bankruptcy Court was not clearly erroneous in finding that Debtor failed to prove what actions she would have taken to minimize her loss had BOI notified her of Terry's default, and in finding that there is no evidence of what the results of any possible actions would have been. Debtor's assertions that she would have "contacted an attorney" and "notified the bank to cancel out anything with my name on it," are insufficient proof that she would have suffered less of a loss had she been notified of Terry's default when the default first occurred. (Transcript, May 21, 1995, p. 30). In addition, the Court notes that there is no evidence in the record to show that Debtor owned assets other than the beneficial inter-

---

4. The balance on the loans in evidence, but not necessarily all loans of Terry's that were secured by the Guaranty, as of July 19, 1991 was $254,-600.76 plus interest in the amount of $5,073.25. As explained below, the fair market value of the collateral on July 19, 1991 is not clear. The Court will assume here, for the sake of argument only, that the value of the collateral was the $199,883.30 that is now in an escrow account as the proceeds from the sale of the collateral in 1994. Debtor's equity, which in July of 1991 was a one-half beneficial interest in Land Trust 85–124, would be approximately $85,441.15. Terry's indebtedness of $254,600.76 far exceeded Debtor's beneficial interest in the Land Trust on July 19, 1991. Therefore, even if the Court accepted Debtor's date of default, Debtor has not shown that she was damaged by BOI's failure to give notice.

est in the Land Trust which could be used to meet her obligations under the Guaranty on the date of default.

The Court may not base an award of damages on pure speculation and conjecture. *Econo Coach,* 73 Ill.Dec. at 882, 454 N.E.2d at 1131; *Alover,* 513 F.2d at 1141. Accordingly, the Court affirms that Bankruptcy Judge's order of May 22, 1995 finding that Debtor failed to meet her burden of proof on the issue of damages.

## IV. CONCLUSION

For the foregoing reasons, the November 29, 1994 order of the Bankruptcy Court granting partial summary judgment in favor of the Bank of Illinois is AFFIRMED, and the May 22, 1995 order of the Bankruptcy Court finding that Debtor failed to meet her burden of proof on the issue of damages is AFFIRMED.