BYSOM ENTERPRISES, LTD., Plaintiff-Appellee, v. PETER CARLTON
ENTERPRISES, LTD., *et al.*, Defendants-Appellants.

First District (1st Division)   No. 1—92—2665

Opinion filed May 31, 1994.—Rehearing denied October 25, 1994.—Modified
opinion filed October 31, 1994.

Jason W. Bruce, of Chicago, for appellants.

Schain, Firsel & Burney, Ltd., of Chicago (Jerome Wiener and Kerri L. McBride, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendants, Peter Carlton Enterprises, Ltd., Robert C. Aulston, William C. Goodall, and Peter Carlton Properties (collectively PCP or Seller(s)), appeal the granting of summary judgment in favor of plaintiff, Bysom Enterprises, Ltd. (Bysom), in this breach of contract action. We affirm.

On August 31, 1987, PCP entered into a purchase agreement (the Purchase Agreement) with James Broderson and Ronald Stillman (the Buyer(s)), under which the Buyers agreed to purchase the business and assets of eight restaurants located in Chicago and doing business under the franchise name of "Popeye's Famous Fried Chicken and Biscuits" (the Restaurants). The Buyers assigned all their rights under the Purchase Agreement to Bysom. On November 30, 1987 (the closing), Bysom took title to the Restaurants.

Paragraph 6 of the Purchase Agreement provided that PCP would sell to the Buyers "by a proper Bill of Sale certain personal property in its present 'as is' condition, without warranties *** including but not limited to equipment, kitchen fixtures, furniture, smallwares, inventory of goods, cleaning supplies, and other goods and supplies, used in the business." Among the equipment in two of the Restaurants was an AT&T telephone system. Subsequent to the closing date, Bysom began receiving monthly bills from AT&T for the telephone system, indicating it had not been owned by PCP; rather, it was leased from AT&T. Bysom then purchased the system for $3,812.63.

Under paragraph 11 of the Purchase Agreement, PCP warranted:

"(a) Sellers own and will convey merchantable title to Buyer[s] of all specific property described herein.

(b) all property, sales, federal and state withholding and any and all other taxes are paid and current.

* * *

(g) the Sellers hereby agree to indemnify, save and hold harmless the Buyers from and against any and all liability or claims or losses or damages that the Buyers may sustain as a result of this purchase and due to the Sellers' fault."

At closing, sales like this one were governed by the "Bulk Sales" provisions of the Uniform Commercial Code—Bulk Transfers (UCC) (Ill. Rev. Stat. 1987, ch. 26, par. 6—101 et seq.). Under sections 6—105 and 6—106 of the UCC (Ill. Rev. Stat. 1987, ch. 26, pars. 6—105, 6—106), in order to avoid the liabilities of the creditors of the Restaurants, Bysom was required to file a bulk sales notice with the creditors. Pursuant to section 6—104 (Ill. Rev. Stat. 1987, ch. 26, par. 6—104), PCP provided Bysom with a list of the Restaurants' credi-

4

tors; however, that list did not include the State of Illinois or the City of Chicago. As a result, Bysom did not file a bulk sales notice with the City of Chicago Department of Revenue (the City) or the Illinois Department of Revenue (the State).

On March 15, 1989, the State notified Bysom that because it had failed to file a bulk sales notice with the State, it had a liability owing to the State in the amount of $2,179.78, which had been incurred prior to the closing, for retailer's occupation taxes and various withholding, excise, and income taxes. On May 19, 1990, Bysom received a similar notice from the City regarding delinquent sales and employees' expense taxes incurred between January 1, 1987, and November 30, 1987, and between January 1, 1984, and November 30, 1987. The City assessed Bysom for $28,907.72 plus continuing interest at 2% a month.

In conjunction with and as part of the Purchase Agreement, the Buyers and PCP also entered into a reproration agreement (the Reproration Agreement), under which Bysom and PCP agreed to reprorate 1987 real estate taxes, which were payable in 1988, for two of the franchise locations (the Reproration Franchises). PCP had granted the Buyers credits for 1987 taxes they had paid on the Reproration Franchises; however, because the 1987 tax bills for the Reproration Franchises included taxes on property not conveyed to the Buyers, the Reproration Agreement provided that after PCP successfully obtained separate tax identification numbers for the Reproration Franchises, "such that the respective bills for 1988 and subsequent years will cover only the property conveyed to Buyer *** PCP and Buyer will, in good faith recompute the credits given by PCP to Buyer at the Closing in an equitable manner, by computing, as accurately as may be possible, the amounts such credits would have been at the Closing if such additional property had not been included." The Reproration Agreement provided that any amount payable under its terms would include interest at 10% per year from the closing date until payment. In addition, the Reproration Agreement provided for an award of attorney fees incurred by a party in filing and pursuing any lawsuit to enforce the Reproration Agreement.

When Bysom received the subsequent tax assessments, which reflected the division of the Reproration Franchises, it recalculated the 1987 taxes on the Reproration Franchises pursuant to the Reproration Agreement, determining that PCP owed it $11,704.65 and $9,306.75, respectively, for the Reproration Franchises. Bysom requested payment under the Reappropriation Agreement, but PCP refused. This lawsuit ensued.

Bysom moved for summary judgment, supporting its motion by the affidavit of Joseph Nugent, a Bysom agent. Bysom also included copies of 1989 tax bills which reflected the division of the Reproration Franchises. PCP's memorandum opposing summary judgment cited no case law and contained general averments of factual matters which it contended precluded the entry of summary judgment against it. PCP attached the counteraffidavit of Robert Aulston, one of the individual defendants. In his affidavit, Aulston stated that there were "material factual issues which have not been addressed." These "factual" issues included his unsupported assertions that defendants did not know that the Restaurants had delinquent taxes; that the parties intended only that defendants be liable for warranty breaches if defendants were at fault; that the parties intended that paragraph 16 of the Purchase Agreement be the exclusive remedy for breaches of the purchase Agreement; that defendants did not intend to include the telephone system in the Purchase Agreement; and that Bysom owed PCP money under the Reproration Agreement.

The trial court stressed that the affidavits in support of PCP's opposition to summary judgment failed to state any evidentiary facts that countered the facts established by Bysom's pleadings, affidavits, and documentation. Thus, the court ruled that, as a matter of law, the telephone system was a part of the sale of equipment under the Purchase Agreement. On the same basis, the trial court ruled that Bysom had established a breach of PCP's warranty that all taxes were paid on the properties involved and that Bysom had established PCP's liability under the Reproration Agreement, including an award of attorney fees. For breach of warranty, the trial court awarded Bysom $34,900.13—the purchase price of the telephone system and the full amount of back taxes owing, as assessed by the City and State. For breach of the Reproration Agreement, the trial court awarded $21,011.40 plus interest and attorney fees amounting to $9,893.72.

PCP claims that the trial court "abused its discretion" in granting summary judgment in this case. However, abuse of discretion does not correctly state the standard of review. Indeed, a trial court has no discretion in deciding a motion for summary judgment. (*Loyola Academy v. S&S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 272, 586 N.E.2d 1211.) Pursuant to section 2—1005 of the Code of Civil Procedure, a trial judge may grant summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c).) Summary judgment is a "drastic means of disposing of litigation and

should only be allowed when the right of the moving party is clear and free from doubt." (*Loyola Academy*, 146 Ill. 2d at 271.) The trial judge's function is to examine the pleadings, exhibits, and affidavits on file in order to ascertain whether a factual dispute exists, and this court is required to reverse if there is either a genuine issue of material fact or an erroneous interpretation of the law. In determining the existence of a genuine issue of material fact, courts must construe the record on file in the case strictly against the movant and liberally in favor of the opponent. *Barber-Colman Co. v. A&K Midwest Insulation Co.* (1992), 236 Ill. App. 3d 1065, 1071-72, 603 N.E.2d 1215; *John v. City of Macomb* (1992), 232 Ill. App. 3d 877, 596 N.E.2d 1254.

PCP raises numerous contentions regarding the trial court's ruling on the Reproration Agreement.

■ First, PCP contends that Bysom improperly attached 1989 real estate bills to its motion for summary judgment and complaint to prove PCP's liability for 1987 taxes. We disagree. Bysom could not have attached 1987 tax bills to its pleadings because the 1987 tax bills would not have reflected that the Reproration Franchises had been separated from other property owned by PCP. Bysom submitted the 1989 tax bills because they reflected the division of the Reproration Franchises from the other properties. PCP presented nothing other than its assertion that this was inappropriate. If other tax bills existed which would have disputed Bysom's calculations as to the amounts of money owed under the Reproration Agreement, PCP should have presented them in opposition to Bysom's motion for summary judgment. Mere factual assertions do not create a material issue of fact. (*Purdy Co. v. Transportation Insurance Co.* (1991), 209 Ill. App. 3d 519, 568 N.E.2d 318.) The record as presented to the trial court showed that Bysom recalculated the real estate taxes for the Reproration Franchises as required by the Reproration Agreement. PCP offered nothing of legal significance in opposition. Thus, the trial court correctly found that, as a matter of law, Bysom had correctly calculated the taxes under the Reproration Agreement. *Schultz v. American National Bank & Trust Co.* (1976), 40 Ill. App. 3d 800, 806, 352 N.E.2d 310.

■ PCP contends, however, that for a variety of reasons, the affidavit Bysom filed in support of its motion for summary judgment did not comply with Supreme Court Rule 191(a) (134 Ill. 2d R. 191(a)). PCP failed to object to the affidavit by motion to strike or otherwise. Any complaint as to the affidavit is, therefore, waived. *Kearns v. Board of Education of North Palos Elementary School District No. 117* (1979), 73 Ill. App. 3d 907, 913-14, 392 N.E.2d 148.

■ PCP's final significant contention regarding the Reproration

Agreement is that the individual defendants cannot be held liable under the Reproration Agreement because they did not sign it in their individual capacities. This issue was not raised below; hence, it has been waived for purposes of appeal. (*Wade v. City of Chicago Heights* (1991), 216 Ill. App. 3d 418, 439 n.3, 575 N.E.2d 1288, *appeal denied* (1991), 141 Ill. 2d 562, 580 N.E.2d 137.) In any event, as Bysom notes, PCP admitted in its answer to Bysom's complaint that the individual defendants were bound by the Reproration Agreement. Furthermore, the Reproration Agreement and the Purchase Agreement were executed simultaneously by the same parties as part of the same transaction. Under such circumstances, the two contracts are viewed as a single contract. *McDonald's Corp. v. Butler Co.* (1987), 158 Ill. App. 3d 902, 909, 511 N.E.2d 912.

PCP raises a host of ancillary matters regarding the Reproration Agreement, none of which were raised below in its opposition to summary judgment. These matters are waived. (*Wade*, 216 Ill. App. 3d at 439 n.3.) The trial court correctly entered summary judgment on the Reproration Agreement.

PCP claims that the trial court erred in granting summary judgment in favor of Bysom on Bysom's claim that PCP breached Paragraph 11(b) of the Purchase Agreement, which warrants that "all property, sales, federal and state withholding, and any and all other taxes are paid and current." In support of its claim, Bysom produced the tax assessments levied against it by the City and the State. Focusing its analysis on the unambiguous terms of paragraph 11(b), as is mandated in a contract case (*Holden v. National Boulevard Bank* (1992), 231 Ill. App. 3d 26, 33, 596 N.E.2d 47), the trial court granted summary judgment, having found a breach of warranty as a matter of law.

On appeal, PCP alleges that Bysom failed to establish the elements of a breach of an express warranty. In order to establish the breach of an express warranty, a party must establish a breach of an affirmation of fact or promise which was made part of the basis of the bargain. (*Wheeler v. Sunbelt Tool Co.* (1989), 181 Ill. App. 3d 1088, 1100, 537 N.E.2d 1332, *appeal denied* (1989), 127 Ill. 2d 644, 545 N.E.2d 134.) PCP did not dispute either of these elements in the trial court. Thus, its claim on appeal that the affirmation in paragraph 11(b) was not a part of the basis of the bargain is waived. *Wade*, 216 Ill. App. 3d at 439 n.3.

Even so, PCP's contention that paragraph 11(b) was not a part of the basis of the bargain is frivolous. Under *Wheeler*, the fact that the warranties are in the Purchase Agreement is *prima facie* evidence that they are part of the bargain. (See *Wheeler*, 181 Ill. App. 3d at

1102.) The burden of disproving this is upon PCP. PCP offers nothing to counter the evidence established by the Purchase Agreement itself.

■ Citing *Frazer v. A.F. Munsterman, Inc.* (1988), 123 Ill. 2d 245, 527 N.E.2d 1248, PCP also raises the novel contention that because Bysom's negligence in failing to file the bulk sales notice with the City and the State was the proximate cause of its liability, PCP is not liable for its breach of warranty. *Frazer* is a strict liability tort case involving breaches of implied warranties of merchantability. *Frazer* holds that the negligent distributor of a product cannot, in a third-party action, escape liability to a plaintiff merely by shifting its liability to the manufacturer of the product who is strictly liable to the same plaintiff. (*Frazer*, 123 Ill. 2d at 248-66.) *Frazer* is inapposite to the question of PCP's liability for its breach of a contract warranty made solely to Bysom. Comparing the circumstances in *Frazer* to those here strains common sense.

Nonetheless, PCP is correct in its assertion that the city levies in this case were assessed against Bysom because it failed to file a bulk sales notice with the city pursuant to Chicago Municipal Code section 3—4—140(B)(3) (1987), which dictates that if the purchaser of a business "fails to file notice as required herein, then the purchaser or transferee shall be jointly and severally liable with the seller or transferor for the amount of taxes, interest, penalties or nontax debts owed by the seller or transferor to the city." The filing of such notices is critical for the purchaser of a business because upon filing, the Department of Revenue conducts an audit of the seller to determine the amount of taxes owing up to the date of sale. Chicago Municipal Code § 3—4—090 (1987).

Under section 3—4—140(B), Bysom is jointly and severally liable with PCP as to outstanding tax and interest owed to the city. Because PCP breached its warranty under section 11(b) that the taxes were paid, Bysom is entitled to reimbursement for the tax liability it owed to the State and to reimbursement for the base tax liability it paid the city as damages for breach of contract. Furthermore, under paragraph 11(g), PCP indemnified Bysom against all liability that it sustained as a result of the sale due to PCP's fault. We consider the fault here to lie with PCP. PCP warranted that all taxes had been paid. This was a misrepresentation. Had PCP not misrepresented its tax status, Bysom's failure to file a bulk sales notice would have occasioned Bysom no liability. Given the warranties and indemnification in the Purchase Agreement, we will not shift the responsibility for PCP's taxes to Bysom.

PCP counters, however, that paragraph 16 of the Purchase Agreement was intended by the parties to be a sole, limited-duration

remedy for warranty breaches. Paragraph 16 of the Purchase Agreement provided that the Seller would place $50,000.00 of the purchase price in escrow

"to cover Material Breaches of Sellers warranties and representations. \*\*\* The funds so escrowed \*\*\* shall be released to sellers ninety days after closing unless Buyers notify the Sellers that there is a breach of warranty or covenant as contained within this agreement. If in fact, notice is given to the Seller of the breach and if the matter is not resolved by the parties hereto, the Escrow Agent shall release the funds, escrowed pursuant to this paragraph, to the Sellers unless Buyers institute litigation within 120 days from closing."

PCP contends that because Bysom did not discover its tax liability within 90 days, it is barred from recovering in a lawsuit.

The parties' intent as to the scope of a contract is irrelevant where the language of the contract is clear and unambiguous. (*Quake Construction, Inc. v. American Airlines, Inc.* (1990), 141 Ill. 2d 281, 565 N.E.2d 990.) There is nothing in the Purchase Agreement that suggests that paragraph 16 constitutes a sole, limited-duration remedy for warranty breaches. If Paragraph 16 was to be the sole remedy, the parties could have provided for that in the Purchase Agreement. That they did not is hardly surprising. A warranty that taxes on property are paid, by definition, cannot be one limited in duration. Back taxes such as the ones at issue here are fixed by the relevant tax period—here, 1987 and earlier. Furthermore, the tax liabilities were not discoverable within 90 days because of PCP's warranty that the taxes had been paid. Bysom's liability only became apparent when the City and the State issued assessments against it; however, as far as Bysom had been concerned, under paragraph 11(b) of the Purchase Agreement, those tax liabilities did not exist. Further, paragraph 11(g) expressly indemnifies Bysom against liability for the taxes and does not limit that indemnification to the ninety days set forth in paragraph 16. Indeed, paragraph 11(g) sets no limit on PCP's warranty: "[t]he Sellers hereby agree to indemnify, save and hold harmless the Buyers from and against *any and all* liability or claims or losses or damages that the Buyers may sustain as a result of this purchase and due to the Seller's fault." (Emphasis added.) Under established rules of contract construction (see *Holden*, 231 Ill. App. 3d at 33), paragraph 16 cannot take away, by negative inference, that which paragraph 11(g) expressly grants.

■ PCP also claims that Bysom is barred from recovery of the tax liability on the grounds of *res judicata* and collateral estoppel. The basis of this contention is that because the City and the State

adjudicated a liability against Bysom, Bysom is precluded from contending that PCP is liable to Bysom. PCP's invocation of these doctrines is tortured, at best. Furthermore, PCP did not raise these issues before the trial court. PCP's motion to dismiss mentions neither *res judicata* nor collateral estoppel as a basis to dismiss the complaint. Thus, these contentions are waived on appeal. (*Wade*, 216 Ill. App. 3d at 439 n.3.) In any event, paragraph 11(g) of the Purchase Agreement establishes PCP's liability to Bysom for all of the back taxes at issue. The trial court properly granted summary judgment on the breach of warranty claim.

■ Finally, PCP claims that the trial court erred in finding that, as a matter of law, the telephone system that was in two of the Restaurants was part of the equipment sold to Bysom under paragraph 6 of the Purchase Agreement. After taking title, Bysom began receiving monthly bills from AT&T for the telephone system. Bysom then purchased the system. The trial court found that PCP had disclosed numerous leases in the Purchase Agreement, thus excluding the items so designated from the purview of paragraph 6. Because the telephone system was not excluded, the trial court concluded that the telephone system was part of the bargain under paragraph 6 and awarded Bysom the purchase price of the system because paragraph 11(a) contains a warranty of title for all property transferred under the Purchase Agreement.

Summary judgment can be based upon inferences drawn from circumstantial evidence, so long as no conflicting inferences can be drawn. (*Purdy*, 209 Ill. App. 3d at 527.) Although PCP correctly notes that none of the documents describing the transaction expressly enumerates the telephone system—not the Purchase Agreement and not the bills of sale for the individual Restaurants—this was a bulk sale, which contemplates the sale of everything in the Restaurants not expressly excluded. Indeed, the trial court noted, and we do likewise, that paragraph 7 of the Purchase Agreement expressly excluded some leased property from the purview of paragraph 6. Furthermore, the lists of creditors provided by PCP for the two restaurants at issue did not include AT&T. Most telling, however, is the wording of the bills of sale for the personal property in the Restaurants. Paragraph 6 states that the transfer of personal property would be accomplished by bill of sale. Those bills of sale stated that personal property would be transferred "including but not limited to all equipment, kitchen fixtures, furniture, smallwares, inventory of goods, cleaning supplies and other goods and supplies." "All equipment" means all equipment, unless otherwise expressly excluded. We can draw no inference from the Purchase Agreement

other than that PCP intended the phones to be part of the transfer of personal property.

Affirmed.

CAMPBELL, P.J., and MANNING, J., concur.