In the

# United States Court of Appeals
### For the Seventh Circuit

———————

No. 07-2850

JOHN M. RICKHER,

*Plaintiff-Appellant,*

*v.*

HOME DEPOT, INC., a Delaware Corporation,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 2152—**John F. Grady**, *Judge.*

———————

ARGUED MARCH 31, 2008—DECIDED JULY 28, 2008

———————

Before KANNE, EVANS, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* John Rickher brought a class-action lawsuit against Home Depot, arguing that Home Depot's sale of a "Damage Waiver" in connection with tool rentals violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA"), *see* 815 Ill. Comp. Stat. 505/2. Rickher claims that the waiver is a worthless product because it does not provide any value or protection to the customer beyond what is already provided in the basic "Rental Agreement." In Rickher's view, the sale of the worthless Damage Waiver is both

deceptive and unfair under the CFA. The district court rejected Rickher's argument and denied his motion for class certification. Because we agree with the district court that the Damage Waiver has value, we affirm the judgment.

## I. HISTORY

This appeal deals with a question that many consumers face on a regular basis—should I buy the extra protection being offered with this purchase or rental? John Rickher faced this question on over a dozen occasions over the past few years when he rented tools and equipment from Chicago-area Home Depot stores. On each occasion, Rickher entered into a three-page contract—the Rental Agreement—with Home Depot. The first page is Home Depot's copy of the agreement. It outlines the description and price of the rental, with itemized charges; one line item is labeled "Damage Waiver." The first page also contains a "Special Terms and Conditions" section, which includes the following statement: "I accept the benefits of the damage waiver (if applicable) described in paragraph 11 in the terms and conditions of this rental agreement." The customer signs the first page of the agreement, underneath this statement of acceptance. The second page is the customer's copy of the agreement, and it also describes the rented item and the itemized charges. It looks very much like the first page (Home Depot's copy), but does not contain the Special Terms and Conditions that are identified on the front page.

The third page details the specific terms and conditions of the agreement. Four provisions are relevant to Rickher's appeal. According to the "Risk of Loss" provision (¶ 3), a

rental customer is liable for all "damage or destruction, partial or complete" to the equipment. A different provision (¶ 5) explains that the customer is *not* liable for "reasonable wear and tear resulting from proper use." Then, according to the "Repair or Replacement" provision (¶ 6), in the event a tool or piece of equipment becomes unsafe or in a state of disrepair, Home Depot has the "option" to fix the equipment, provide the customer with a comparable item, or adjust the rental charge. The Repair or Replacement provision goes on to explain that if the equipment is damaged or in disrepair because of the customer's improper use or maintenance, the customer will bear the cost of the replacement or repair. Finally, there is the Damage Waiver provision (¶ 11), which relieves the customer of liability for damage to the equipment that does not result from the customer's improper use of the equipment, provided the customer pays an additional fee.

The precise language of the baseline Risk of Loss provision (¶ 3) states:

> . . . I [the customer] assume all risks of loss, theft, damage or destruction, partial or complete, of the Equipment from any and every cause whatsoever.

The second relevant condition, which Rickher characterizes as the "Wear and Tear" provision (¶ 5), specifically provides:

> I acknowledge that I have examined the Equipment, seen it in operation (if appropriate) and that its condition is acceptable. I agree to surrender the Equipment to you upon termination hereof, in as good order and condition as when received, except for reasonable wear and tear resulting from proper use, and if re-

turned unclean, I may be charged a reasonable cleaning fee. I agree to keep and maintain the Equipment in good condition, use it in a careful and proper manner (including without limitation maintenance of proper fuel, oil and lubricant levels, if applicable) and comply with all applicable laws and regulations.

In the Repair or Replacement provision (¶ 6), the customer agrees:

immediately to discontinue using Equipment that becomes unsafe or in a state of disrepair, and immediately to notify [Home Depot] of such fact. You [Home Depot] have the option to make such Equipment operable within a reasonable time, provide me with a similar piece of Equipment or adjust the rental charge. However, if such Equipment is unsafe or in disrepair because of my improper use or maintenance, I will bear the expense of such replacement or repair or, at your option, be declared in default.

The Damage Waiver provision (¶ 11) explains that, if the customer pays the Damage Waiver charge—a fee equal to ten percent of the cost of the equipment's regular rental charge—Home Depot will "waive" its right to hold the customer liable for damage caused to the product while in the customer's possession—except for damage caused by the customer's misuse or abuse of the equipment (among other exceptions).

If I pay the Damage Waiver charge for any Equipment, this agreement shall be modified to relieve me of liability for accidental damage to it, but not for any losses or damages due to theft, burglary, misuse or abuse, theft by conversion, intentional damage, disappearance or any loss due to my failure to care properly

for such Equipment in a prudent manner (including without limitation by using proper fuel, oil and lubricants and not exceeding such Equipment's rated capacity, if applicable).

In the district court, Rickher claimed that Home Depot had violated the CFA in two ways. First, he alleged that Home Depot deceived him into believing the Damage Waiver was a mandatory charge by failing to inform him each time he rented tools that the waiver was optional, and by including it, as a default condition, in each Rental Agreement. Second, he argued that the Damage Waiver is a "worthless" product because it does not provide consumers with any protections above and beyond those already afforded by the regular Rental Agreement. Rickher sought to certify a class consisting of persons who paid the Damage Waiver charge when they rented equipment from Home Depot stores in Illinois during the three-year period before Rickher filed his complaint.

The district court determined that Rickher's evidence could not survive summary judgment on either of his claims. When he rented the tools, Rickher failed to read the Rental Agreement, which clearly described the non-mandatory nature of the Damage Waiver. As for the scope of the Damage Waiver, the district court decided that the waiver had value, so there was nothing deceptive or unfair about Home Depot's sale of the waiver to customers. After granting summary judgment in Home Depot's favor, the district court denied Rickher's motion for class certification as moot.

## II. ANALYSIS

Rickher's only challenge on appeal is to the district court's disposition of the cross-motions for summary judgment respecting Count II of his Second Amended Complaint, which alleged that the Damage Waiver is a worthless product. We review *de novo* the district court's disposition of cross-motions for summary judgment, while construing the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made. *BASF AG v. Great Am. Assurance Co.*, 522 F.3d 813, 818 (7th Cir. 2008). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The resolution of the CFA claim in this case depends entirely on the terms of the Rental Agreement contract, and as such, summary judgment is appropriate only if there are no genuine issues of material fact surrounding the interpretation of that contract. *See Cherry v. Auburn Gear, Inc.*, 441 F.3d 476, 481 (7th Cir. 2006). Under Illinois law, the interpretation of a contract presents a question of law that is decided by the court.[1] *BASF,* 522 F.3d at 818-19; *Bowers Mfg. Co., Inc. v. Chi. Mach. Tool Co.*, 453 N.E.2d 61, 66 (Ill. App. Ct. 1983). Neither side argues that the contract is ambiguous, nor do we identify an ambiguity that prevents our analysis. The contract is not

---

[1] The parties both properly assume that the substantive law of Illinois governs this diversity action, which alleges violations of Illinois's Consumer Fraud and Deceptive Business Practices Act.

" 'susceptible of different constructions when read in its plain and ordinary meaning,'" *see Cromeens, Holloman, Sibert, Inc., v. AB Volvo*, 349 F.3d 376, 394 (7th Cir. 2003) (quoting *Althoff Indus., Inc. v. Elgin Med. Ctr., Inc.*, 420 N.E.2d 800, 803 (Ill. 1981)), so we proceed to the merits of the question raised on appeal: whether the Damage Waiver is "worthless."

Rickher argues that the Damage Waiver is worthless because even without it, the Rental Agreement relieves renters of liability for all damage to a piece of equipment that results from its proper use. In his view, the Damage Waiver offers no additional protection because it excludes from coverage damage resulting from improper use. Thus, Rickher argues that the Damage Waiver is redundant because damage from proper use is already excused by the Rental Agreement, and the Damage Waiver does not excuse the customer of anything other than damage from proper use. In Rickher's opinion, the Damage Waiver is a worthless product, and charging customers a fee for a worthless product is deceptive and unfair under the CFA.

To demonstrate a deceptive practice under the CFA, Rickher must show that he suffered actual damages and he must present facts demonstrating: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the deception occurred in the course of trade or commerce; and (4) the consumer fraud proximately caused the plaintiff's injury." *White v. DaimlerChrysler Corp.*, 856 N.E.2d 542, 546 (Ill. App. Ct. 2006); *see also Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996). To show that something is an "unfair practice" under the CFA, the practice must offend public policy; be immoral, unethical, oppressive, or unscrupulous; or cause substantial injury to consumers.

*Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002). " 'All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.' " *Id.* (quoting *Cheshire Mortgage Serv., Inc. v. Montes*, 612 A.2d 1130, 1143 (Conn. 1992)).

At first blush, the Rental Agreement clearly allocates all risks to the customer—the Risk of Loss provision in paragraph 3 states that the customer is responsible for all damage and loss to the rented item. Thus, unless the Risk of Loss provision is modified or nullified by other provisions in the Rental Agreement, the Damage Waiver effectively alleviates some of the customer's liabilities. Charging customers for the waiver and its corresponding shifting of risks is an acceptable arrangement that appears neither deceptive, nor unfair. *See Chabraja v. Avis Rent A Car System, Inc.*, 549 N.E.2d 872, 875 (Ill. Ct. App. 1989) (explaining that bailee is generally liable for injury to bailed property, but parties are free to alter traditional risk allocations by contract so long as resulting agreement does not violate public policy).

Rickher points to the Repair and Replacement provision, as well as the Wear and Tear provision, to argue that Home Depot shifts nearly all of the risk away from the customer and onto Home Depot. Rickher's argument can be broken down as follows:

1. The Risk of Loss provision (¶ 3) provides the baseline: the customer is responsible for all loss, theft, damage, or destruction, partial or complete, of the equipment, regardless of the cause.

2. The Repair and Replacement and Wear and Tear provisions effectively nullify the Risk of Loss

provision by shifting all of the risk onto Home Depot, except for the risk of damage resulting from improper use or maintenance, which remains with the customer.

   a. The Wear and Tear provision (¶ 5) provides that customers are not liable for reasonable wear and tear that results from proper use. Wear and tear encompasses all "damage" resulting from proper use, so customers need not worry about anything except for damage resulting from improper use or abuse.

   b. The Repair and Replacement provision (¶ 6) states that customers will have to pay for repairs or damage caused by *improper* use or maintenance; according to Rickher, this affirmative statement, absent a comparable statement about the customer's liabilities for damage resulting from *proper* use, establishes that customers will *never* be liable for damage to a piece of equipment unless that damage results from improper use, abuse, or improper maintenance.

3. The Damage Waiver (¶ 11) excludes coverage for damages stemming from improper use, abuse, and improper maintenance. The Rental Agreement already protects customers from liability for damage resulting from proper use (via ¶¶ 5 & 6), so the Damage Waiver adds no additional coverage, even though customers pay a fee for the Damage Waiver.

Rickher's argument hinges on his interpretation of paragraphs 5 and 6. But as the district court recognized,

Rickher's reading of the Wear and Tear and Repair and Replacement provisions suffers from major flaws.

The first flaw is that Rickher broadly defines the concept of "wear and tear" to encompass any and all damage that might occur during a tool's proper use. Rickher reads paragraph 5—which explicitly allows for "reasonable wear and tear" of the tool during the rental period—to relieve the customer of liability for any and all damage to the tool so long as that damage happens by way of proper use of the tool. This leads Rickher to conclude that the Damage Waiver is effectively the inverse of the Wear and Tear provision: the customer is already relieved of responsibility for damages resulting from proper use, but the Damage Waiver excludes from its protections any damages stemming from improper use—so, it provides no additional protection to the customer. Home Depot, on the other hand, claims that the Wear and Tear provision of paragraph 5 does not effect a shifting of risks—it simply informs the customer that Home Depot will not hold the customer liable for reasonable wear and tear of the equipment. "The paragraph does not mention loss, damage, or destruction of the tool, nor does it mention who is required to pay for any such loss, damage or destruction."

Rickher cites dictionary definitions of "wear and tear" to support his contention that damage and wear and tear are one and the same: "Depreciation, damage, or loss resulting from ordinary use or exposure," Webster's II New College Dictionary (1995); "Damage or deterioration resulting from ordinary use; normal depreciation," Random House Webster's College Dictionary (1992). Although it is true that dictionary definitions of "wear and tear" often employ the word "damage," that does not mean

that damage and "wear and tear" are synonymous. Wear and tear is a more specific phrase that connotes the expected, often gradual, depreciation of an item. *See* Wear and Tear, http://en.wikipedia.org/wiki/Wear_and_tear, last visited May 30, 2008.

> It is a form of depreciation which is assumed to occur even when an item is used competently and with care and proper maintenance. For example, friction may erode a hammer's head. In the normal use of a hammer for its designed task erosion is impossible to prevent, and any attempt to eliminate this erosion would make the hammer useless. At the same time, it is expected that the normal use of a hammer will not break it beyond repair until it has gone through a certain amount of use.

*Id.* Most items, such as power tools, when used regularly, suffer from ordinary wear and tear. Tools are not meant to be maintained in pristine condition, and Home Depot recognizes that motors will slow over time, blades will dull, and casings will get scratched. True, these measures of depreciation technically can be termed "damage"; but while all wear and tear resulting from proper use might fall under the broad category of "damage," the inverse—that all damages fall under the category of wear and tear—is simply not true. *See Kallman v. Radioshack Corp.*, 315 F.3d 731, 740 n.5 (7th Cir. 2002) (drawing line between reasonable wear and tear, which was allowed in the contract, and damage: "The district court found that the extensive damage and poor condition of the roof, parking lot, and HVAC units did not constitute 'reasonable wear and tear,' and we agree"); *W. Assets Corp. v. Goodyear Tire & Rubber Co.*, 759 F.2d 595, 603 (7th Cir. 1985) (delineating "ordinary wear and tear, such as ma-

sonry work" from "several items that may be described as damage to the building, such as broken windows, doors, floor tiles and ceiling tiles").

In a Southern District of Florida case dealing with the same Home Depot Damage Waiver, the plaintiff also "equate[d] damage to the phrase 'normal wear and tear.' " *Jeff Enters., Inc. v. Home Depot U.S.A., Inc.*, 07-60302-CIV, slip op. at 9 (S.D. Fla. July 27, 2007) (unpublished decision). The *Jeff Enterprises* court pointed out that the Rental Agreement uses the terms "wear and tear" and "damage" separately, which supports reading the terms to have different meanings. Additionally, if damage and wear and tear are synonymous, then the Risk of Loss and Damage Waiver provisions in the Rental Agreement are meaningless. *See id.* ("Jeff Enterprises' interpretation renders both the [Risk of Loss] and Damage Waiver provisions of the Rental Agreement meaningless, which runs contrary to basic contract interpretation principles."); *see also Elda Arnhold & Byzantio, L.L.C. v. Ocean Atl. Woodland Corp.*, 284 F.3d 693, 705 (7th Cir. 2002) ("Illinois courts construe contract terms 'so as to avoid rendering other terms redundant or meaningless.'" (quoting *Carroll v. Acme-Cleveland Corp.*, 955 F.2d 1107, 1112 (7th Cir. 1992))). Rickher's interpretation of the Wear and Tear provision would render the Risk of Loss provision meaningless. We see no reason for constructing a new definition of wear and tear (per Rickher's suggestion) that encompasses all damage resulting from proper use, where the contract uses "damage" and "wear and tear" differently, and where such an interpretation would render meaningless other provisions in the contract.

Rickher further argues that even if we reject his interpretation of the Wear and Tear provision, the Rental

Agreement still relieves the customer of liability for all damage resulting from anything but improper use by way of the Repair and Replacement provision. Rickher claims that because Home Depot specified in paragraph 6 that renters must pay for repairs caused by improper use, the store implicitly absolved renters of all liability for damage caused by proper use. Rickher argues:

> It is completely implausible . . . to interpret a contract that affirmatively states that renters must pay for repairs caused by improper use to mean that renters must also pay for repairs caused by proper use. What would be the point of the statement that renters must pay for repairs caused by improper use? This is the contract's only clause setting forth the parties' respective obligations in the event a tool needs to be repaired, and the last sentence [stating that customer is responsible for repair stemming from improper use] is therefore the definitive statement of when renters must pay for repairs.

Rickher must have overlooked the Risk of Loss provision when he wrote that the Repair and Replacement provision is the "only clause setting forth the parties' respective obligations in the event a tool needs to be repaired . . . ." By way of the Risk of Loss provision, the customer assumes the risk of *all* loss, theft, damage or destruction, partial or complete, from any and every cause whatsoever.

The Repair and Replacement provision, on the other hand, merely outlines steps the renter agrees to take if a tool becomes unsafe or unusable. It then explains that Home Depot will either fix the tool, provide the renter with a similar tool, or adjust the rental charge. The pro-

vision addresses a particular scenario: how Home Depot will respond when a tool or piece of equipment becomes unusable during a portion of the paid-for rental period. It does not address the risk of loss for damaged or unusable tools, nor does it discuss who will bear the expenses of repairing or replacing the tool if the tool is damaged during proper use, or if it is damaged by accident.

Rickher argues that the final sentence of paragraph 6 modifies the Risk of Loss provision by negative implication. That sentence states: "However, if such Equipment is unsafe or in disrepair because of my improper use or maintenance, I will bear the expense of such replacement or repair or, at your option, be declared in default." Rickher invokes the maxim of *expressio unius est exclusio alterius*—the expression of one thing is the exclusion of another—to argue that by expressing one scenario in which customers are liable for repair or replacement expenses, Home Depot means to exclude all other possible scenarios.

It has long been recognized in Illinois that the maxim of *expressio unius est exclusio alterius* is "a rule of construction—not of substantive law." *Drexel State Bank of Chi. v. O'Donnell*, 176 N.E. 348, 352 (Ill. 1931). Importantly, the rule "should never be followed to the extent of overriding a different intent clearly expressed." *Id.* (internal quotation omitted). "[W]e see no occasion for bringing in and endeavoring to apply a maxim which would detract from the grant of a power so clearly expressed and so unmistakably conferred." *Id.* at 353. *See also* 17A C.J.S. *Contracts* § 327 (explaining that the contract-interpretation maxim "is applicable only where clearer indications of the proper construction are lacking, and should not be used to create an ambiguity, or to contradict a clear expression of intent"). The Risk of Loss provision in this

contract is clear—it makes no sense for us to impute ambiguity into the contract simply because Home Depot decided to remind customers that they are liable for damage they cause to Home Depot's property by way of their improper use or abuse.

Further, Home Depot has no need to address the consequences or liabilities of damage resulting from either proper use or accidents in paragraph 6, the Repair and Replacement provision. The extent of liability will vary depending on whether the Damage Waiver is purchased by a particular customer. If a renter does not purchase the Damage Waiver protection, but accidentally damages the tool during proper use, or if the tool suffers damage when not in use, then under the terms of the contract, the renter will be liable for those damages (¶ 3). If a renter purchases the Damage Waiver, then the renter would not be liable for such damages. A third scenario is that the tool becomes unusable or unsafe due to some other cause: the motor of an old tool could die while the tool is being rented; a fuse in a tool could short out. These types of maladies are not caused by proper use, improper use, or accidents. They just happen. Under any of the above scenarios, if the tool is brought to Home Depot, the contract explains that Home Depot will repair the tool or provide the renter with another tool, within a reasonable time. Or, Home Depot will adjust the rental charge to reflect the situation. Notably, the Repair and Replacement provision does not say that Home Depot will adjust the charge downward. If a tool comes into disrepair by way of a consumer's proper use, Home Depot could very well adjust the charge upward, unless the customer purchased the Damage Waiver.

With the Repair and Replacement provision, Home Depot anticipates that tools may get damaged during

rental periods and thus the store outlines how it plans to respond when a tool is rendered unsafe or unusable. Home Depot does not outline in this provision the liabilities and responsibilities of the consumer or of Home Depot for every possible scenario of tool damage. Therefore, the fact that Home Depot emphasizes that customers will be responsible for repairs resulting from improper use does not render the baseline Risk of Loss provision in the very same contract void by way of negative implication. *See Byson Enters., Ltd. v. Peter Carlton Enters., Ltd.*, 641 N.E.2d 838, 844 (Ill. App. Ct. 1994) (explaining that established rules of contract construction do not allow one provision of contract to take away, by negative inference, what another provision expressly grants).

The genesis of Rickher's problem—with his interpretations of both paragraphs 5 and 6—is that he divides the world of tool usage into two and only two realms: proper use and improper use. There is no other possible scenario for Rickher. To him, the fact that Home Depot emphasized a scenario involving improper use means that Home Depot meant to exclude the same scenario involving proper use of the tool. But as the district court pointed out, Rickher fails to acknowledge a third realm—the one in which accidents occur. We would all like to use tools perfectly, but accidents happen and sometimes tools get damaged as a result. While using a circular saw to cut through a two-by-four, a carpenter might hit a screw that is not visible because its head is broken off in the wood. The saw blade is bent and rendered useless. The carpenter is not using the tool "improperly," but still, the saw blade is damaged in an unanticipated way—beyond the scope of normal "wear and tear." Accidents can happen when a tool is not even being used.

Take the example provided by the district court: "the customer stores a tool in his garage and something else in the garage falls on the tool and damages it. This is also accidental damage that does not occur during use."

The Damage Waiver, by its plain language, states that it protects customers from liability for *accidental* damage to the tool. As the district court decided, the Damage Waiver has value because it modifies the broad allocation of risk to the rental customer by "relieving the renter from liability for accidental damage to the tool—both when the tool is being used properly and when the tool is not being used at all."

The possible scenarios in which a customer may successfully invoke the benefits of the Damage Waiver may not be great—*i.e.*, when damage results from an accident during proper use, when damage happens while the tool is not being used, or when damage from proper use exceeds wear and tear—but they exist. We agree with the district court that "the plain language of the Rental Agreement demonstrates that the Damage Waiver does have value." Home Depot is entitled to charge customers a price in exchange for its waiver of some of the customer's baseline liability under the Rental Agreement. Thus, Rickher has not established a genuine issue of material fact as to either the Damage Waiver's deceptiveness under the CFA, or it unfairness. Our decision aligns with those of other courts that have addressed this issue, *see Pacholec v. Home Depot U.S.A. Inc.*, No. 06-827, slip op. at 4 (D.N.J., July 31, 2007) ("[T]here was value to the Damage Wavier. It does not constitute an unconscionable commercial practice."); *Jeff Enters.*, 07-60302-CIV, slip op. at 10 ("[T]he Damage Waiver would shield a customer from liability stemming from any damage sustained by the

equipment during normal use that is more extensive than normal wear and tear, and as a result, the Damage Waiver does have value.") (unpublished decision); *see also Cook v. Home Depot U.S.A., Inc.*, No. 2:06-CV-00571, 2007 WL 710220, at 7 (S.D. Ohio, Mar. 6, 2007) ("the terms and conditions of the Damage Waiver suggest Plaintiff received reasonable insurance coverage") (unpublished decision).

## III. CONCLUSION

For the foregoing reasons, we AFFIRM summary judgment in Home Depot's favor.